EDWARD ROBERTS, Respondent, *v.* THE NEW YORK ELEVATED
RAILROAD COMPANY et al., Appellants.

Where, in an action by an abutting owner to restrain the operation and
maintenance of an elevated railroad in a street, the question as to the fee
value of the property rights of which plaintiff is deprived by the unlaw-
ful structure is gone into for the purpose of determining the amount to
be paid by defendant for a conveyance of those rights, the defendant
is entitled to claim that the investigation shall be made upon compe-
tent and legal evidence, and if improper evidence is admitted, to its
damage, it has the right to ask the appellate court for relief; it is no
answer that defendant is not bound to avail itself of the privilege granted
of paying the amount of damages found for a conveyance of the ease-
ments, but may submit to an injunction.

As to whether the defendant has the right to refuse to pay and to submit
to the injunction, *quære.*

In such an action the opinion of an expert as to what would have been the
value of plaintiff's property had defendants' road not been built and
operated is incompetent testimony. (RUGER, Ch. J., and GRAY, J.,
dissenting.)

*Clark* v. *Baird* (9 N. Y. 183); *Kenkele* v. *Manhattan R. Co.* (55 Hun, 398);
*McGean* v. *Manhattan R. Co.* (117 N. Y. 219), distinguished.

*R. & S. R. R. Co.* v. *Budlong* (10 How. Pr. 289); *Hine* v. *N. Y. E. R. R. Co.*
(36 Hun, 293), disapproved.

(Argued April 14, 1891; decided October 20, 1891.)

APPEAL from judgment of the General Term of the Superior
Court of the city of New York, entered upon an order made
January 5, 1891, which affirmed a judgment in favor of plain-
tiff entered upon a decision of the court on trial at Special
Term.

This was an action to restrain defendants from maintaining
and operating their elevated railroad on Third avenue in front
of plaintiff's premises in the city of New York, and to recover
damages. The judgment granted the injunction asked, unless
defendants pay a sum stated as the value, and upon convey-
ance of the plaintiff's easements in the street taken by the
road, in which case the injunction was denied.

The facts, so far as material, are stated in the opinion.

*Brainard Tolles* for appellant. The learned trial judge erred in receiving the opinions of witnesses as proof of the existence and amount of damages to plaintiff's property. (*McGean* v. *M. R. Co.*, 117 N. Y. 219; *Avery* v. *N. Y. C. & H. R. R. R. Co.*, 121 id. 31; *Morehouse* v. *Matthews*, 2 id. 514; *Clark* v. *Baird*, 9 id. 183; *Van Deusen* v. *Young*, 29 id. 9; *Marcly* v. *Shults*, Id. 346; *Teerpenning* v. *C. E. Ins. Co.*, 43 id. 279; *Green* v. *Plank*, 48 id. 669; *Van Zandt* v. *M. B. Ins. Co.*, 55 id. 169; *Ferguson* v. *Hubbell*, 97 id. 507; *Wakeman* v. *W. & W. M. Co.*, 101 id. 205; *Reed* v. *McConnell*, 101 id. 270.) Such evidence encroaches upon the functions of the jury or other appointed triers of fact. (*Van Deusen* v. *Young*, 29 N. Y. 9; *Van Zandt* v. *M. B. L. Ins. Co.*, 55 id. 169; *Avery* v. *N. Y. C. & H. R. R. R. Co.*, 121 id. 31; *Fish* v. *Dodge*, 4 Den. 311; *Cook* v. *Brockway*, 21 Barb. 331; *Simons* v. *Monier*, 29 id. 419; *Lincoln* v. *S., etc., R. Co.*, 23 Wend. 425; *Fleming* v. *D. & H. C. Co.*, 8 Hun, 358; *Hudson* v. *Caryl*, 2 T. & C. 245; *Rauch* v. *N. Y., L. & W. R. Co.*, 2 N. Y. Supp. 108; *W., etc., R. Co.* v. *Kuhn*, 38 Kan. 675; *Prosser* v. *W. Co.*, 18 Ia. 327; *Railway Co.* v. *Gardner*, 45 Ohio St. 309; *C., etc., R. Co.* v. *S., etc., R. Co.*, 67 Ill. 142; *Hames* v. *Brownlee*, 73 Ala. 277.) It violates the rule that opinion evidence shall be received only in cases of necessity. (*M., etc., R. Co.* v. *Kellogg*, 94 U. S. 469; *Carter* v. *Boehm*, 3 Burr, 1913, 1914; *Teerpenning* v. *C. E. Ins. Co.*, 43 N. Y. 279; *Reed* v. *McConnell*, 101 id. 270; *Van Wycklen* v. *City of Brooklyn*, 118 id. 424; *Dolittle* v. *Eddy*, 7 Barb. 74; *Drucker* v. *M. R. Co.*, 106 N. Y. 157; *McGean* v. *M. R. Co.*, 117 id. 219.) It involves a conclusion of the witness upon a matter of law as to the measure of damages. (*Richardson* v. *Northrup*, 66 Barb. 85; *Matter of N. Y., W. S. & B. R. Co.*, 29 Hun, 609; *White* v. *Stoner*, 18 Mo. App. 540; *Rochester, etc., R. Co.* v. *Budlong*, 10 How. Pr. 289; *Decker* v. *Myers*, 31 id. 372.) The formation of such conclusions does not appertain to any science, art, trade or occupation known to mankind. (*Ferguson* v. *Hubbell*, 97 N. Y. 507; *Van Wycklen* v. *City of Brooklyn*, 118 id. 424; *Duff*

v. *Lyon,* 1 E. D. Smith, 536; *Thompson* v. *P. R. Co.,* 51 N. J. L. 42.)    The matter is one upon which judges and jurors are as competent to pass as any witness, when the necessary facts as to values and courses of values are placed before them. (*Ferguson* v. *Hubbell,* 97 N. Y. 507; *Reed* v. *McConnell,* 101 id. 270; *Thompson* v. *P. R. Co.,* 51 N. J. L. 42.)    Such conclusions are conjectural and can have no certain or definite basis of fact.    (*Marcly* v. *Shults,* 29 N. Y. 346; *Wakeman* v. *W., etc., Co.,* 101 id. 205; *Lamoure* v. *Caryl,* 4 Den. 370; *Lincoln* v. *S., etc., R. Co.,* 23 Wend. 425; *Thompson* v. *M. R. Co.,* 29 N. Y. S. R. 720; *M., etc., R. Co.* v. *Kellogg,* 94 U. S. 474.)    The admission of such evidence tends to induce an omission to prove the facts necessary for an independent and intelligent decision of the question of damage.    (*Morehouse* v. *Matthews,* 2 N. Y. 514; *Avery* v. *N. Y. C. & H. R. R. R. Co.,* 121 id. 31; *Paige* v. *Hazard,* 5 Hill, 603; *Giles* v. *O'Toole,* 4 Barb. 261; *Newton* v. *Fordham,* 7 Hun, 58.)    Such evidence cannot be tested or contradicted by proof of facts.    (*Cook* v. *Brockway,* 21 Barb. 331; *Ferguson* v. *Hubbell,* 97 N. Y. 507, 514; *Booth* v. *C. M. Co.,* 74 id. 15; *Folkes* v. *Chadd,* 3 Doug. 157; Stephen on Evidence, art. 50.)    Such evidence affords an ample field for bias and corruption, and is contrary to the policy of the law.    (*Tracy Peerage Case,* 10 Cl. & Fin. 154, 191; *Ferguson* v. *Hubbell,* 97 N. Y. 507; *Wakeman* v. *W., etc., Co.,* 101 id. 205; *Reed* v. *McConnell,* Id. 270; *People* v. *Kemmler,* 119 id. 580; *E. R. Co.* v. *Fitzpatrick,* 10 Ind. 120; *Martin* v. *N. Y., N. H. & H. R. R. Co.,* 103 N. Y. 626; *Duff* v. *Lyon,* 1 E. D. Smith, 536; *Nickerson* v. *Ruger,* 76 N. Y. 279, 283; *Avery* v. *Slack,* 17 Wend. 85, 87; *Worrall* v. *Parmalee,* 1 N. Y. 519; *Gates* v. *Ward,* 17 Barb. 424; *Anderson* v. *R., W. & O. R. Co.,* 54 N. Y. 334, 342.)    Plaintiff contends that the error in question can only affect the fourth element of the judgment, viz., the award of money damages, since, as he alleges, his right to an injunction is absolute and the determination of the amount of the alternative is an extra judicial act not subject to appellate review or correction.    This is untenable.    (*Henderson* v. *N.*

*Y. C. & H. R. R. R. Co.,* 78 N. Y. 423, 430; *Uline* v. *N. Y. C. & H. R. R. R. Co.,* 101 id. 98, 118; *Story* v. *N. Y. E. R. Co.,* 90 id. 122, 148, 171, 179; *Pond v. M. E. R. Co.,* 112 id. 189, 190; *Tallman* v. *M. E. R. Co.,* 121 id. 119, 125; *Abendroth* v. *M. R. Co.,* 122 id. 1, 17; *N. Y. E. R. Co.* v. *F. N. Bank,* 135 U. S. 432, 440; *Taylor* v. *M. E. R. Co.,* 18 J. & S. 311, 322, 328; *S. A. R. Co.* v. *M. E. R. Co.,* 56 Hun, 182, 185; *People* v. *A., etc., R. Co.,* 24 N. Y. 261; *Olcott* v. *Supervisors,* 16 Wall. 678; *U. P. R. Co.* v. *Hall,* 91 U. S. 343; *State* v. *H., etc., R. Co.,* 29 Conn. 538; Laws of 1875, chap. 606, § 26; *Powers* v. *M. R. Co.,* 120 N. Y. 178; *Ode* v. *M. E. R. Co.,* 56 Hun, 199; *Brush* v. *M. R. Co.,* 26 Abb. [N. C.] 73; *Smith* v. *City of Rochester,* 92 N. Y. 477, 487; *Glover* v. *M. R. Co.,* 19 J. & S. 1; *M. Society* v. *B. E. R. Co.,* 46 Hun, 530; *Vick* v. *City of Rochester,* Id. 607; *Lohman* v. *S. P., etc., R. Co.,* 18 Minn. 174; Pom. Eq. Juris. § 109; *Worrall* v. *Munn,* 38 N. Y. 137, 142; *Lahr* v. *M. E. R. Co.,* 104 id. 268, 293; *Hussner* v. *B. C. R. Co.,* 114 id. 433; *Shaw* v. *Stone,* 1 Cush. 228, 243; *McKeon* v. *See,* 51 N. Y. 300; *Cromwell* v. *McLean,* 123 id. 474, 484; *Jackson* v. *Van Slyke,* 52 N. Y. 645; *H. Ins. Co.* v. *W. T. Co.,* 51 id. 93; *Wangler* v. *Swift,* 90 id. 38, 45; *Helch* v. *Reinheimer,* 105 id. 470, 473; *Ormsby* v. *V., etc., M. Co.,* 56 id. 623; *Thomas* v. *Bartow,* 48 N. Y. 193; *N. A. R. Co.* v. *N. Y. E. R. Co.,* 3 Abb. [N. C.] 347; *Mattlage* v. *N. Y. E. R. Co.,* 67 How. Pr. 232; *Goodwin* v. *C., etc., C. Co.,* 18 Ohio St. 150; *McAulay* v. *W. R. Co.,* 33 Vt. 311; *B. R. Co.* v. *Grace,* 13 N. E. Rep. 680; *St. Julien* v. *R. Co.,* 35 La. Ann. 924; *Scudder* v. *T., etc., Co.,* 1 N. J. Eq. 694; *B., etc., R. Co.* v. *Strauss,* 37 Md. 237; *E. R. Co.* v. *D., etc., R. Co.,* 21 N. J. Eq. 283; *Andrews* v. *F. L. & T. Co.,* 22 Wiss. 288; *Logansport* v. *Uhl,* 99 Ind. 531; *Griffin* v. *A., etc., R. Co.,* 70 Ga. 164; *P., etc., R. Co.* v. *Jackson,* 21 Fla. 146; *F. B. Co.* v. *Dodge County,* 6 Neb. 18; *W. U. T. Co.* v. *Judkins,* 17 Ala. 428; Story's Eq. Juris. 388, 389; Pom. Eq. Juris. § 817; *Newman* v. *M. E. R. Co.,* 118 N. Y. 618; *In re N. Y., L. etc., R. Co.,* 27 Hun, 151; *In re N. Y., W. S. & B. R. Co.,*

29 id. 609; *In re B. E. R. Co.*, 28 N. Y. S. R. 627; *In re U. E. R. Co.*, 8 id. 813; *In re K. C. E. R. Co.*, 35 id. 367; *Doyle* v. *Metropolitan E. R. Co.*, 29 id. 139; 32 id. 72; *Werfelman* v. *M. R. Co.*, Id. 682; *Jefferson* v. *N. Y. E. R. Co.*, 11 N. Y. Supp. 488; *Mattlage* v. *N. Y. E. R. Co.*, Id. 482; *Gray* v. *N. Y. E. R. Co.*, 12 id. 542; *Welsh* v. *N. Y. E. R. Co.*, Id. 545; *Foote* v. *Beecher*, 78 N. Y. 155; *Holcomb* v. *Holcomb*, 95 id. 316, 329; *Hubbell* v. *Schreyer*, 4 Daly, 362, 382; *Schoonmaker* v. *Wolford*, 20 Hun, 166; *Church* v. *Kidd*, 3 id. 254; *Varnum* v. *Hart*, 14 N. Y. S. R. 140, 147; *Doty* v. *Stanton*, 18 id. 427; *Rogers* v. *Wheeler*, 6 Lans. 420; *Smith* v. *Cross*, 90 N. Y. 549; *Sanford* v. *Elllithorp*, 95 id. 48; *Carroll* v. *Deimel*, Id. 252; *Marsh* v. *McNaier*, 99 id. 174; *Nugent* v. *Jacobs*, 103 id. 125.)

*Henry H. Man* for respondent. The evidence of expert witnesses was competent as to the diminution of fee and rental value. (*Clark* v. *Baird*, 9 N. Y. 183; *People* v. *McCarthy*, 102 id. 639; *Krum* v. *Beach*, 96 id. 407; 1 Whart. on Ev. § 450; *In re City of Rochester*, 40 Hun, 588; *Kenkele* v. *M. R. Co.*, 55 id. 398; *Vanderberg* v. *B. & A. R. R. Co.*, 2 Wkly. Dig. 474; *Hine* v. *N. Y. E. R. R. Co.*, 36 Hun, 293; *Reed* v. *R., W. & O. R. R. Co.*, 48 id. 231; *Shaw* v. *City of Charleston*, 2 Gray, 107; *Shattuck* v. *S. B. R. R. Co.*, 6 Allen, 116; *Swan* v. *Middlesex*, 101 Mass. 173, 178; *Snow* v. *B. & M. R. R. Co.*, 62 Me. 230; *W. D. C. I. Co.* v. *Sassaman*, 67 Penn. St. 415; *Carter* v. *Thurston*, 58 N. H. 104; *Sigafoos* v. *Mineapolis*, 36 Am. & Eng. R. R. Cas. 675; *Portland & R. R. R. Co.* v. *Inhabitants*, 23 id. 51; *Yost* v. *Curry*, 92 Ind. 469; *G. & S. W. R. R. Co.* v. *Haslam*, 73 Ill. 494; *K. & E. R. R. Co.* v. *Henry*, 79 id. 290; *City of Chicago* v. *McDonough*, 112 id. 85; *Colvill* v. *S. P. & C. R. Co.*, 19 Minn. 283; *Sherman* v. *S. P., M. & M. R. Co.*, 30 id. 227; *Lehmicke* v. *S. P., S. & T. F. R. R. Co.*, 19 id. 464, 481; *Snyder* v. *W. U. R. R. Co.*, 25 Wiss. 60; *T. T. Co.* v. *Forke*, 2 Tex. 365; *Texas & S. L. R. Co.* v. *Kerby*, 44 Ark. 103; *Railroad* v. *Foreman*, 24 W. Va. 673; *Dunsback* v.

*Hollister*, 49 Hun, 352.) There can be no reversal in this case, even if expert testimony as to diminution of value be held incompetent. (*Crawford* v. *M. E. R. Co.*, 120 N. Y. 624.)

Peckham, J. The principal question in this case is in regard to the admissibility of the opinions of experts in reference to the amount of damages sustained by the plaintiff by reason of injury to his easements of light, air and access to his property in Third Avenue, in the city of New York, caused by the building and operation of the defendants' railroad. As the question is one of considerable importance and arises in each one of this class of cases, and as the number of such cases tried and to be tried is as we understand very large, a critical examination of the question is called for. It will be well to have a clear view of the facts existing at the time the questions in controversy were put to the witness, so that we may determine understandingly the precise point in issue.

It appears that the plaintiff in November, 1852, became the owner in fee of the premises in question, which consisted originally of six lots on the east side of Third avenue and on the south side of Ninety-ninth street, but the plaintiff subsequently sold some, leaving himself with a frontage of about 100 feet on Third avenue and about 110 feet in depth. These lots cost the plaintiff about $500 apiece at the time he purchased them, at which time they were vacant, and they so remained until 1865, when the plaintiff leased them for $150 per year.

The tenant erected a house upon the corner lot, with a stable, which buildings were destroyed by fire about 1877, at which time the tenant gave up his lease and the lots remained vacant until 1881. In the meantime the plaintiff filled them in and graded them. Before filling in, the premises formed a portion of a marsh or swamp over which the tide ebbed and flowed. In 1881, the plaintiff sold these lots under a contract for $40,000, and the purchaser commenced the erection thereon of the present buildings, five in number, four of which front

on Third avenue and the fifth on Ninety-ninth street, each house being four stories high, constructed of brick, with brown stone trimmings. The buildings are about 47 feet front elevation and 65 feet deep and cost about $11,000 each. The purchaser had them substantially enclosed and the plastering nearly completed in the spring of 1883, when the plaintiff foreclosed his liens thereon and took them from him and completed them, so that they were ready for occupancy in the fall of the year 1883. Since the month of October, 1883, the buildings have been leased to tenants and the rents actually collected from the Third avenue buildings from January 1, 1884, to January 1, 1889, have been from one house and lot $7,053; from the second $6,129.11; from the third $7,554.50; from the fourth $7,541.66.

The defendants' railroad was constructed in Third avenue in front of plaintiff's lots in the year 1878, and was put in operation in December of that year. The plaintiff in his complaint alleged that the building of the railroad was unlawful, and that the unlawful construction thereof interfered with his access to his premises and impaired his easement in the street or avenue by depriving him of a large portion of light and air and of facility of access to them in the amount of $75,000, and by reason of the maintaining and operating and managing of defendants' railways, the value and the use and enjoyment of his premises, he alleged, had been depreciated and diminished to the amount of $5,000 per annum. He demanded judgment against the defendants restraining them from operating their road through Third avenue in front of his premises, and also from continuing the unlawful acts set forth in his complaint, and he asked that the damages he had sustained down to the commencement and during the pendency of this action be adjusted by the court, and that he might have judgment therefor against the defendants, and each of them, and such other relief as should be just and equitable.

The defendants joined issue with the plaintiff in regard to many of his allegations and set up that the defendants were

organized under the laws of the state of New York, granting them the right to use the street in question for the purpose of building their railroad, and that they had built it and equipped it and used and operated it under such acts of the legislature and in the most careful and skillful manner in which it was possible to construct, use and operate the same in the street mentioned in the complaint.

Upon the trial of the action, the plaintiff was a witness, and after stating the condition of the premises, and the fact that he had erected or caused to be erected buildings upon them at an expense of about $11,000 each, he said that he had offered the whole premises for sale, including the house on Ninety-ninth street, about two years previous, which would have been in the fall of 1887, for the sum of $105,000, and in his judgment, that was a fair price for them. Here is certainly a very large appreciation in value over the original cost. Would it have been as much if the railroad had not been built?

It will be seen that the present buildings were not erected until some two years after the building of the road had been completed and the operation thereof commenced. Whether the value of the property would have been still greater without the road than it now is with it, was the fact to be found by the court.

Upon the trial a witness was called on behalf of the plaintiff and testified that he was a real estate broker and had carried on that occupation in the city of New York for twenty-eight years; his transactions had extended throughout the whole city and had involved both leasing and selling; he knew the property in question and was familiar with the value of that property and of the property in the neighborhood; he had made an examination of the property with a view of seeing what the physical effects to the abutting property were, produced by the railroad and its trains, commencing at least six months ago, on four or five different occasions; he had given special attention to the effect upon abutting property produced by the elevated railroad and the passing of its trains; he had been examined a large number of times as

a witness on the subject and in reference to property scattered all over the city ; he had made it his business to be familiar not only with the selling but the rental values of property along Third avenue since the railroad came there; he had informed himself about such transactions, not only in reference to this property, but other property; so far as experience from personal transactions was concerned he had none in that vicinity since the building of the railroad, in renting or in selling; he had been engaged by property owners for the last three years to make examinations and testify as an expert witness, and it had been a considerable part of his business, and in every case in which he had testified he had testified against the railroad company; he was paid $100 to come and give these opinions; he did not know but that the property at the upper end of Third avenue had been benefited to some extent ; his opinion was that rapid transit had helped Harlem; the building up of the upper end of Harlem had been due to the growth and filling up of all the cross streets ; the growth and filling up of the cross streets had been due to the rapid transit afforded by the elevated railroad in large part.

The following question was put to him : " To what extent, if at all, in your judgment, is the value of Mr. Roberts' four buildings on the Third avenue — excluding from consideration the house on Ninety-ninth street — to what extent, in your judgment, is the value of that property damaged, if at all, by the presence of the structure and the running of the trains ? "

Under objection and exception the answer was permitted and the witness stated that the diminution extended from about $110,000 to $80,000, including the loss to the fee value simply.

The court then said : " That is, you think that the four houses fronting on Third avenue are worth $80,000 now ? "   Witness : " Yes, sir."   Court : "And that they would be worth $110,000 if the structure and road were not there ? "   Witness : " Yes, sir."   Q. " What do you estimate the rental value of the property to be, the railroad not being there ?   I refer to the Third avenue front only."

Same objection and exception. Answer: " $9,000." Q. "And the railroad being there?" A. " $6,400, as collectable rents, I mean."

Upon this appeal the question is, were these objections of the defendant properly overruled?

By resorting to a court of equity and seeking the aid of such court to prevent the operation of the defendants' road until all his damages consequent upon the illegal construction of its road in front of his premises have been paid once for all, the plaintiff has brought before the court the question what were the damages to the fee of the premises owned by him, consequent upon this wrongful act of the defendant? The amount of damages thus caused to plaintiff's fee is the precise question which the court or jury must determine, and for such amount the court gives judgment upon condition of the plaintiff executing a deed to the defendant of the property wrongfully taken or interfered with by it.

The first question asked of this witness, to which exception is taken, as above noted, calls for his opinion as to the amount of such damage, and the second question is of substantially the same nature, except that it refers to the injury to the rental value of the property instead of the injury to the fee. The precise and specific question which is to be determined by the court and jury is by this interrogatory placed before the witness for his opinion and decision. To permit it to be asked and answered is beyond all question against the great mass of authority in this and other states.

It is now asked that this court, in view of the alleged abnormal character of the litigation growing up in the city of New York over the erection and operation of these elevated railroads, shall sanction in regard to them a departure from well established rules of law touching the admission of expert evidence. It seems to me that neither the nature nor the extent of the litigation affords the slightest justification for such departure.

Expert evidence, so-called, or, in other words, evidence of the mere opinion of witnesses, has been used to such an extent

that the evidence given by them has come to be looked upon with great suspicion by both courts and juries, and the fact has become very plain that in any case where opinion evidence is admissible, the particular kind of an opinion desired by any party to the investigation can be readily procured by paying the market price therefor. We have said lately that the rules admitting the opinions of experts should not be unnecessarily extended, because experience has shown it is much safer to confine the testimony of witnesses to facts in all cases where that is practicable, and leave the jury to exercise their judgment and experience on the facts proved. As is stated by Earl, J., in *Ferguson* v. *Hubbell* (97 N. Y. 507), "It is generally safer 'to take the judgments of unskilled jurors than the opinions of hired and generally biased experts."

It is the general rule that testimony should consist of facts and not opinions, and the admission of opinions, forms an exception to that general rule. Mr. Justice Cowen said, in speaking of the opinions of witnesses as to the then present value of real estate, that they were barely admissible and that to receive them at all was a departure from the general rule of evidence, and that judges who preside at *nisi prius* sometimes have reason to regret that they should in practice form an exception. He referred to *Rochester* v. *Chester* (3 N. H. 349, 364–366), where the court refused to receive the opinions of witnesses as to the value of land, even from those skilled in the market. They said the land must be described and the jury must then judge from the facts. (See *Matter of Pearl Street*, 19 Wend. 654.)

I refer to this not for the purpose of throwing any doubt upon the admissibility of expert evidence upon the question of the past or present value of real estate, where the witness is shown to be competent to give an opinion thereon. That was decided years ago by this court, and has been continuously approved since that time (see *Clark* v. *Baird*, 9 N. Y. 183), but I cite it for the purpose of showing the opinion of learned judges regarding evidence of this kind when it first came into practice, and the questions thereon first came up for decision.

The only inquiry here is whether this is one of those cases in which the testimony is allowable.

The precise question has been decided by this court as lately as the 117th N. Y. Rep. 219, in *McGean* v. *Manhattan Railway Co.* The question there asked was, "What would have been the fair rental value in the years 1879, 1880 and 1881 if the railroad had not been built?" And we decided it to be improper. It was so held because it is merely speculative, and it is speculative upon the very question and upon the only question which the court or the jury is called upon to decide, and the question calls for the opinion of the witness upon that very subject. Some criticism has been made in regard to that case by the learned counsel for the plaintiff herein, and we are asked substantially to review it and to reverse our decision therein. We have carefully considered the arguments of counsel on both sides and have again looked through the cases decided in this court upon the subject, and we are unable to see that there has been any error in the *McGean* case, but, on the contrary, we think it is in strict conformity with the law as heretofore laid down by this court.

I shall refer to but a few of the cases cited by the appellant herein to sustain his claim that the court below erred in admitting the question in controversy. They are all contained in his very voluminous brief upon the subject submitted to us, and out of them the following are all I deem it necessary to comment upon. *Morehouse* v. *Matthew* (2 N. Y. 514) was an action brought by the plaintiff to recover damages for a breach of contract by the defendant in not feeding to the plaintiff's cattle as good hay as had been agreed upon. The plaintiff asked a witness what damage had occurred in consequence of feeding the cattle upon the hay in question instead of that agreed upon. Under objection, the witness answered he thought the damage would be fifty dollars. This court reversed the judgment on the ground that the evidence had been erroneously admitted, and that the question called simply for the opinion of the witness as to the amount of damage sustained by the plaintiff.

*Van Deusen* v. *Young* (29 N. Y. 9) was an action under
the Revised Statutes to recover treble damages for cutting trees
on a certain piece of land owned by the plaintiffs, who were
remaindermen subject to a life estate. A witness was asked,
What, in your opinion, is the difference in value of the farm
by the removal of the timber? and also, Would the farm be
worth more or less with the timber cut off? DAVIES, J., held
the questions were objectionable as calling for a specu-
lative opinion, and not for facts, and referred to *McGregor* v.
*Brown* (6 Selden, 114); and MULLIN, J., said: "It was unques-
tionably competent for the witness to give his opinion as to the
value of the farm with the timber on, and its value after it
was taken off. The difference between the two may be the
damages, and in cases where the damages are arrived at by
merely subtracting one sum from another, it may seem to be
refining overmuch to refuse the witness the right to make the
subtraction himself and declare the result; for this is what he
is called on to do when asked to give his opinion as to the
amount of damages." The learned judge was speaking of a
case where the witness knew the farm in question — knew it
when the timber was on it and knew what its value then was,
and the timber having been cut off, he knew what the value of
the land was with the timber thus cut off. And yet in a case
where the difference between the two would be the legal dam-
ages, it does not even then follow that a witness may be asked
the bald question, "What amount of damages has the plaintiff
sustained?" The reason is that the rule of damages is a ques-
tion of law, and the witness, upon such a question, might adopt
a rule of his own and hold the defendant responsible beyond
the legal measure. In *Mardly* v. *Shults* (29 N. Y. 346), the
court, per DENIO, J., held that a witness could not be allowed
to state his opinion of the amount of damages. That was in
an action for damages for raising a dam so as to overflow the
plaintiff's house. The learned judge said the witness could
describe the character of the overflow and its effect, and then
it would be for the jury to estimate the damages; that what
was offered was in substance an opinion as to the amount of

the damages which the plaintiff had sustained by the wrongful act of the defendant.

This court, in *Green* v. *Plank* (48 N. Y. 669), in an action of replevin for a canal boat, reversed the judgment for the plaintiff where the witness had been asked to state the damages for taking and withholding the boat during the time the defendant had it. In *Ferguson* v. *Hubbell* (*supra*), which was an action for damages for a fire, claimed to have been negligently set, from which the plaintiff sustained damage to his land, a farmer was called as a witness for defendant and asked the question, "What do you say as to whether it was a proper time or not to burn a fallow?" The testimony was said to have been erroneously admitted.

In *Van Wycklen* v. *City of Brooklyn* (118 N. Y. 424), the question of the admissibility of expert evidence is discussed and held to be allowable only when, from the nature of the case, the facts cannot be stated or described to the jury in such a manner as to enable them to form a correct judgment thereon, and no better evidence than such opinions is attainable.

In *Avery* v. *N. Y. Central, etc., Co.* (121 N. Y. 31), which was an action for damages on account of the violation of a covenant to keep a proper opening from the defendant's depot yard, opposite the plaintiff's hotel, the plaintiff was asked this question: "Do you know what the rental value of your Continental property, real and personal, would have been between the 10th day of September, 1881, and the 28th day of January, 1884, if there had been a sufficient opening kept and maintained by the defendant opposite your hotel, for the convenient access of passengers and their baggage to and from the twenty foot strip of land lying south of the hotel?" This evidence was held to be improper. Judge GRAY, in delivering the opinion of this court, said: "The witness should not have been permitted to give his opinion upon that head. His testimony should have been confined to stating facts. He might have described the condition of his property. He could have given evidence of what the defendant did to or upon the land over which he claimed to possess rights. He could have

stated what his business was and what it amounted to at times prior and subsequent to any change in the situation and circumstances surrounding its conduct; and it would then be for the jury to draw the conclusions from the facts stated as to whether plaintiff had been injured by the defendant and what amount of damages he should recover."

In *Norman* v. *Wells* (17 Wend. 136), it was held by the old Supreme Court that the amount of indemnity, when it is not capable of being reached by computation, is always a question for the jury. It was stated that if there be any rule without exception, it is this, and the court was unable to find any instance where the opinion of a witness had been received upon that particular question. The action was on covenant for damages to the plaintiff by the erection of another mill on the same stream with plaintiff's mill, and a witness was asked the damages which in his opinion the plaintiff had sustained by reason of the erection of such mill. The question was allowed at Circuit and a new trial was granted for the error in allowing it. The learned counsel for the plaintiff has cited a number of cases on his side, which he claims are authorities for the question put to the witness herein. The briefs of both counsel exhibit untiring industry and research, and all the cases that have been decided involving questions of this nature both in this and other states would seem to have been found and cited on the one brief or the other. It is impossible to notice them all, and I shall not make the attempt. Special reliance seems to have been placed by the learned counsel for the plaintiff upon the cases I now refer to. In *Clark* v. *Baird* (9 N. Y. 183), the point decided was that the opinions of a witness acquainted with real estate, the value of which was in dispute, were competent upon the question of such value. It was an action on the case by the purchaser of a tavern stand against his vendor for fraudulently misrepresenting the boundaries of the land. A witness for the plaintiff testified that he had examined the tavern stand with a view of buying it and that "it was worth $1,000 if it extended to the race and trees. The strip taken off would reduce it one-fourth." This testimony

was objected to on the ground that the amount of damage could not be ascertained by the opinion of the witness. The objection was overruled and the defendant excepted. Part of the alleged fraud consisted in the statement that the tavern stand extended to the race and trees. The plaintiff claimed as matter of fact it did not extend so far. The learned judge in the course of his opinion said that the witness had in substance stated the value of the stand, including all the land it was represented to include, and also in contrast with that statement, and as bearing upon the question of damages, had further stated the value of the stand excluding that part which, as the plaintiff contended, did not pass by the defendant's conveyance to the plaintiff by reason of his want of title. I do not see that the case affords any countenance for the claim of the plaintiff herein. The witness simply stated the value of the tavern as it stood, estimating that a certain amount of ground in plain view was attached to the stand, and then stated what in his opinion was the value of the land with that particular piece of land not included. Within any rule regarding the opinions of experts we think this evidence admissible.

In *Rochester & Syracuse R. R. Co.* v. *Budlong* (10 How. Pr. 289), which was a proceeding by plaintiff to take defendant's property by the right of eminent domain, the opinion of the General Term of the Supreme Court was delivered by Judge Selden in 1854. It contains expressions which favor the views contended for here by plaintiff's counsel and it includes all that can be said in favor of the admission of this kind of evidence. The opinion has not been followed by the courts of this state, and many subsequent decisions of this court, some of which have already been cited, are at war with the doctrines announced by Mr. Justice Selden. The case cannot be regarded as authority in this state at the present time. (See *Harpending* v. *Shoemaker*, 37 Barb. 270 ; *Simons* v. *Monier*, 29 id. 419.)

In *Hine* v. *N. Y. Elevated R. R. Co.* (36 Hun, 293), which was an action brought to recover damages for the obstruction of light, air and access to the plaintiff's premises by reason of

the construction of the defendant's road, a real estate broker was called on the part of the defendant, who, after stating that he was familiar with the premises in question, was asked this question: "What has been the effect in your opinion of the elevated railroad upon the value of the property, so far as the items of light, air and access are concerned?" Upon the plaintiff's objection the question was excluded and the court held that this was error. The court in the course of the opinion, which was delivered by DAVIS, P. J., said that "the answer to the question should have been received. The witness was an expert and that fact was sufficiently shown to entitle him to express an opinion on the subject. The opinion called for related to the precise question of damages which, as will be seen, the court submitted to the jury, and there is no reason why the opinions of experts are not admissible upon those questions." No case is cited in the opinion and what I have quoted is all the learned judge said in regard to the admissibility of evidence of this kind. The case is not in harmony with the cases in this court and should not be followed. The evidence is open to all the objections spoken of, in that it puts the witness in the place of the court and jury, and is only his opinion upon the very point to be decided by them.

In *Kenkele* v. *Manhattan Railway Co.* (55 Hun, 398), an action similar to the one at bar and where as here the defendant had neglected to take proceedings to condemn the property of the plaintiff, the General Term of New York held that the measure of damages was the difference at the time of the trial between the value of the property to which the easements were appurtenant, with the easements, and its value without them. The manner of proving such difference was not discussed. Mr. Justice VAN BRUNT in the course of his opinion in that case, after stating what he regarded as the true rule of damages, said: "We do not think that the Court of Appeals has as yet condemned the rule. Until they do, justice seems to require that it should be followed." It is stated as one of the grounds for the motion for a new trial in that case, that incompetent evidence upon the subject of damages had

been given, but it does not appear what that incompetent evidence was. The learned judge said : "The evidence as to the value of these easements is necessarily, from the very nature of the case, somewhat conjectural, and stringent and strict rules are not to be applied where they would deprive the owner of all proof of damage, as we are dealing with the damage done by a trespasser; and, while damages should be proven with reasonable certainty, the rights and interests of the owner of these easements should not be sacraficed."

. That is undoubtedly true. Continuing the learned judge said : "What more certain evidence of the value of these easements can be given than by proof of what the property to which they are appurtenant would now be worth with the easements, and what it is worth without these easements ?"

Evidence as to what the value of the property would be with the easements alluded to unaffected by defendant's acts, is proper. No dispute arises on that point. The controversy arises when the fact of that value is to be sworn to as an opinion by a so-called expert, and which opinion, speculative and uncertain as it must be, is directed to the very point which the jury is to determine. Evidence upon the subject of this speculative value, a value which in fact does not and cannot exist, should be confined to those facts which the court shall hold to be material for a fair and intelligent judgment and then the inferences to be deduced from them may be drawn just as well by the jury as by the expert, and in all probability much more fairly.

This case is one where the facts which form the basis of opinion can be specified and should be stated, and the inference to be drawn from those facts should be drawn by the court or by the jury.

A sufficient number of cases has been cited on both sides, I think, to place fairly before us the different reasons for the different views which would exclude or permit evidence of this nature to be laid before a jury. There can be no doubt, as I have already observed, that the great weight of authority both in the Supreme Court and in this court is against the introduc-

tion of this evidence.    And, indeed, there is no reason why it· should be introduced.    Expert evidence of the actual value of real estate is proper and in many cases essential.    The present value of the property of the plaintiff can be proved by expert evidence, both the value of the fee and the rental value.    Both classes of value could also be proved by expert evidence, as of a time immediately prior to the building of this road.    They are opinions based on facts which now exist or which once existed, and if the expert have knowledge of them, he should be permitted to state it.    As to what the value would have been under circumstances which never existed, he knows and can know nothing, but must form an opinion wholly speculative in its nature, which opinion must be based upon data perfectly easy for him to state, and from which when once stated, an ordinarily intelligent jury can draw as just and fair an inference of a possible yet conjectural value as could the expert.    And that very inference must in some way be drawn by the jury, for it is the question it is called upon to decide.    The opinion of the expert, if of the least value, would have to be based upon an intelligent consideration and knowledge of the value of other property as nearly as may be similarly situated, in about the same quarter of the town and under nearly the same circumstances, but without the presence of a railroad of the nature of the defendant's in front of the property.    All this information he could easily impart to the jury.

Proof might be made of the filling up of the side streets along the lines of this railroad and of the incoming of a large population, the erection of buildings somewhat similar to plaintiff's and their rental and fee value, and finally a general statement of the condition and value of property in the neighborhood of that in question could be proved.    All these facts would be of service in determining the question to be submitted to the jury.    When they are all stated and past and present values proved, the jury or the court will then be as fully competent to draw the inference which it is its peculiar province and duty to draw as the expert.    This special question is one which all admit is to some extent and in all cases a matter of

conjecture and speculation. How much the appreciation of property is itself due to the erection of the road and the consequent filling up of the neighborhood opened by it, and whether the property without the construction of the road would ever have become as valuable as it is, are questions which, when these various data have been given, can be speculated upon as well by the judicial tribunal as by the hired expert. It is none the less conjecture and speculation because the expert is willing to swear to his opinion. He comes on the stand to swear in favor of the party calling him and it may be said he always justifies by his works the faith that has been placed in him.

This case is a good illustration of what may be almost termed the wholly worthless character for any judicial purpose of the testimony on both sides upon this one point, as to what would be the value of this property if this railroad had not been built. The experts on the part of the plaintiff guessed that it would have been $30,000 more valuable, while those on the part of the appellant, equally intelligent it would seem, and equally honest, thought that the value of the property would have been less than at present if the railroad had not been built. The court is not in the least aided by the various guesses of these hired experts. If the facts upon which these gentlemen based their guesses are placed before the court, more exact justice will, in my judgment, be the result if their speculations be excluded, and all speculation as to the damage sustained by a plaintiff be confined to the court and drawn entirely from the evidence in the case.

It is urged, however, on the part of the plaintiff that even if this question were objectionable, yet the fault was cured by the questions put by the court, in response to which the witness said that the four houses fronting on Third avenue were worth $80,000, and would have been worth $110,000 if this structure and road were not there. If the objection were only to the form of the question, that which was made use of by the court would probably have cured the difficulty. But it is no objection to form that I have been discussing. The

objection is to the substance of permitting the witness to state what in his opinion would have been the value of this property at this time, in case the railroad had not been built and operated. This objection was not cured by the alteration of the form of the question.

It is also claimed that there was sufficient evidence, excluding entirely the evidence of experts under the ruling of the court, upon which this judgment may be sustained. There is some other evidence in the case, but what would have been the result if all this objectionable evidence were eliminated it is impossible for this court to determine. We went to the very extreme limit in upholding the judgment in the *McGean* case, but there the evidence was much more minute and the objectionable evidence seemed to have been objected to on grounds other than its absolute incompetence. We thought it was doubtful whether the objection specifically and pointedly raised the question. The objection in this case is not only that it was incompetent, but the question was objected to on the ground that it was for the court alone, and not for the witness to determine the amount of damage. We think the objection was sufficiently exact to raise the question that has been discussed here.

Lastly, it is alleged on the part of the plaintiff that even assuming error, it is not prejudicial to the defendant because the defendant is not bound to avail itself of the privilege granted it by taking a deed of the easement from the plaintiff upon the payment of the amount of the damages found by the court, but may submit to the injunction and in the meantime take proceedings to condemn the property. We do not think this contention can avail the plaintiff. The inquiry into the fee value of the plaintiff's property is predicated upon the idea that the defendant is to take the property at the value found in order to escape the injunction which would otherwise issue, and indeed it would seem that the defendant would have not much choice in the matter, and that it would be substantially bound by the judgment to take the property at the value found by the court or jury. It is idle to talk about a company

situated like this corporation submitting to an injunction and ceasing to operate its road through the avenue for a single day. It might be questionable whether there would be the slightest justification for such stoppage, founded upon any allegation that the amount of damages awarded by the court was too great. At any rate the question was tried by both sides for the purpose of determining what the amount of damages really was, and the defendant has the right under the circumstances, where the investigation of such question was proper and material, to claim that it should be made upon competent and legal evidence, and where improper evidence is admitted to its damage it has the right to ask the court for relief.

Our conclusion is that for the error in the admission of this evidence the judgment should be reversed and a new trial granted, costs to abide the event.

GRAY, J. (dissenting). The errors presented by this record, and upon which the appellants insist as requiring the reversal of the judgments below, consist in the admission by the trial court of certain evidence adduced by plaintiff to show that the maintenance and operation by defendants of the elevated railroad were damaging to his property rights. Witnesses were called, who were qualified to speak from business experience, from familiarity with the values of real property in the city of New York, and who professed to be skilled, by reason of an especial study of the general effect upon abutting properties of the elevated railroads, and the exceptions arose upon the admission of their opinions in answer to the following questions : " To what extent, in your judgment, is the value of that property damaged, if at all, by the presence of the structure and the running of the trains ? " " What do you estimate the rental value of the property to be, the railroad not being there ? " " To what extent, in your judgment, if at all, is the selling and rental value of this property     *     *     * diminished by the presence on Third avenue of the elevated road and the operation of the passing trains ? " To these questions the defendants interposed objections on several grounds,

the only one of which material here is that of the competency of such evidence, but the trial court, nevertheless, permitted the witnesses to answer.

The question which is thus brought prominently before us for decision is, only comparatively speaking, novel; but it assumes very great importance, because not only are the principles of evidence involved, but, as we are informed, a great number of the decisions in the courts below and many recoveries rest upon the theory that the admission of such evidence is necessary and proper in such cases.  If we shall say that it is inadmissible, it must be because it is deemed contrary to the principles underlying the law of evidence and to settled rules. The point, which is mainly made against the competency of such evidence, is that it calls for the conclusions of the witness upon a matter which the court or jury should alone determine, and, hence, invades their province.  It is also suggested that to allow such evidence is to permit speculation to supply proof. If the proposition were wholly true, it might be difficult to sustain the right of the plaintiff to submit his case to the jury upon such proof.  But it seems to me that the argument against this species of proof is inapplicable to cases of this character; where evidence as to the damage suffered by the abutting land owner cannot always be furnished by exact data, or in statements of facts, and where, to an intelligent judgment upon the issue, expressions of opinions seem so necessary. Nor is it true that the evidence is forbidden by established rules, whether we consider that question upon its truth, or upon the principles of the law of evidence.  These principles cannot be embodied in rigid and lifeless formulas, which deny adaptation to new conditions in human affairs.  They admit of expansion and of frequent exception, whenever it is needed, in order to demonstrate the truth.  A different view of the law of evidence might be extremely subversive of justice.  The law of evidence, as a system, is based both upon principles and upon rules, which, when not prescribed in statutes, arise out of precedents in decided cases.  The rule is an exposition of the principle; and it is based upon judicial

·experience in the investigation of controversies by means of testimony, and is necessarily influenced by what may be the ·existing condition of things.    It is well, though somewhat elementary, to observe that in the application of the principles of the law of evidence to the investigation of the truth, in a controversy over an alleged matter of fact, the aim is to confine the proofs only within the bounds of what is competent and satisfactory evidence ; and that by competent evidence is meant such as the nature of the thing to be proved requires, and that by satisfactory evidence is meant such as shall suffice to satisfy the unprejudiced mind.    (1 Greenl. § 1.)    If some rule of evidence is alleged to militate against the competency of the species of proof offered, I suppose that it should comply with two conditions, to satisfy the mind as to its force.    It should appear that it was established upon a sufficient precedent, fitting the case, and that the nature of the thing to be proved did not require any exception to, or modification of, the supposed rule.        ﹀

In this case the matter of fact, the truth of which is the subject of judicial investigation, is whether the maintenance by the defendants of an elevated railroad structure, and the operation of its trains upon the street in front of the plaintiff's premises, have caused any damage to him, by which the value of his property rights has been impaired.    The controversy is over that fact and the question of the damage.    Such a condition of things in the street is a new use and affects certain rights in and over the street, which are considered as appurtenant to the abutting lands.    It constitutes a taking of the easements, which the property holder is legally, or beneficially, entitled to ; and if he can establish that the acts of the defendants have caused damage to him, by depreciating the value which his estate in the abutting land would otherwise have, he is entitled to recover from them, as *quasi* trespassers, damages to the extent of the injury suffered by his estate.

It is very plain that the value of these easements cannot be arrived at by exact proof.    Judge VAN BRUNT, in delivering the opinion of the General Term of the Supreme Court, in

*Kenkele* v. *The Manhattan Railway Company* (55 Hun, 398), well said : "How are we to arrive at the value of these easements taken by the defendant? To the plaintiffs they are of no value, except because of the enhanced value which they give to the property they own fronting upon the streets. By themselves they are worthless, have no intrinsic value." Hence, he reasoned that the more certain evidence of their value was in proving what the property would be worth with the appurtenant easements and what without them. I think that reflection and a careful consideration of the real bearings of the proof and of the circumstances of the case must induce the conviction that the evidence does not usurp the province of the court or jury, and that there are ample and cogent reasons for its admission.

The admissibility of opinions as proof of the marketable condition and value of property, where it is not practicable to give more definite knowledge, has been long settled and has formed one of the admitted exceptions to the rule which excludes the opinions of witnesses as evidence. (1 Greenl. on Ev. § 440a; *Clark* v. *Baird,* 9 N. Y. 183; *Robertson* v. *Knapp,* 35 id. 91.)

The ground of the exception is not because the persons who give such opinion evidence are superior in scientific capacity, or attainments, but because they are shown to have a knowledge of such matters which jurors have not, and the value of property is actually a mere matter of opinion. If, then, expert, or skilled, evidence is admissible to prove generally the value of real property, why should it be deemed inadmissible to prove its value under different circumstances; that is to say, not only what is its value as at present circumstanced, but what would be its value if circumstanced differently and under ordinary conditions of street uses? And why is an opinion not proper as to the extent of the damage, if any, to the value of the land, as being often the best attainable evidence? The mere objection of incompetency is no longer available to exclude opinion evidence, because upon the fact in controversy, in a case where more definite knowledge is not to be had. There is the

strongest reason for admitting the opinions of witnesses to prove the extent of damage sustained by reason of the defendant's acts, in the circumstances and necessities of the case. Without the aid of the opinions of persons experienced in the subject of real estate, values in a metropolitan centre like New York, it would be rarely possible for the plaintiff to make a satisfactory or sufficient case for an intelligent judgment by courts or jurors. The values of real estate are fixed by and depend upon many considerations. The factors of value, in the particular locality, in the character of the neighborhood and in the tendencies of trade, or of residence, are indefinite and are not matters of common knowledge. A new and different use of the street may affect the growth in value of the city lot favorably, or adversely; but as to which way and to what extent is a matter largely of opinion, based upon study and experience, and not of exact knowledge from definite facts. It is not a matter requiring any particular intellectual attainments to understand, but it involves an acquaintance with affairs and the possession of knowledge, acquired through habits of observation and business, which must be essentially peculiar, and it would be stretching presumption rather far to assume that the knowledge is common to all persons. In the growth of a city and the increase of its business and wealth are causes for a steady enhancement of its real estate values, though its direction may be erratic and incapable of being foreseen. That the value of the plaintiff's property upon the Third avenue might be greater to-day than it was before the defendants built their railroad structure, if the street remained in its earlier condition, is a possible, if not a natural assumption. But it is a fact incapable of definite knowledge, and, plainly, as it seems to me, best ascertainable though the opinions of persons, whose familiarity with the neighborhood and habits of business observation in such respects could qualify them to speak to the issue.

The question before us is not like that of a trespass once committed upon property rights, where the value before the trespass and the value after its commission might sufficiently

express the facts, from which jurors could deduce conclusions as to any damage. Here the continuing trespass upon and the deprivation of appurtenant property rights introduce an element, the aggravation of which is to be considered in connection with possible general benefits conferred and in relation to municipal growth under normal or usual conditions. Whether the elevated railroad enhanced the values of the abutting property over what they would have become in its absence is a fact which is best and more intelligently determined from competent opinions.

An early and leading case in the reports of the decisions of this court is *Clark* v. *Baird* (9 N. Y. 183), which was an action on the case for fraud in misrepresenting the boundaries of property sold by defendant. The premises consisted in a tavern stand, and the representation made was that they extended to a certain mill-race and tree. A witness, who had examined the property with a view to purchase, was permitted, under objection, to testify that "it was worth $1,000 if it extended to the race and trees. The strip taken off would reduce it one-fourth." This testimony was objected to upon the ground that the amount of damage cannot be ascertained by the opinion of the witness. The opinion of the court was delivered by Judge A. S. JOHNSON, a most learned and able jurist, and was directed to the discussion and elaboration of the question of the competency of opinions upon such a question. This is clear from an observation of the judge, who said: "The evidence was pointed solely to the question of damages and the objection was undoubtedly understood by the court to relate to the competency of opinion upon the question of value." Many cases in this and other states were considered, and with such particularity as to render it quite unnecessary to repeat the labor here. The propriety of the evidence objected to was sustained upon the ground of necessity and of superior convenience. The opinion summed up a general discussion in this wise: "Upon this ground (*i. e.*, of necessity), as well as upon that of superior convenience and the constant reception of such testimony upon trials without objection, a tacit but

strong proof of its propriety, it must be deemed established that upon a question of value the opinion of a witness, who has seen the thing in question and is acquainted with the value of similar things, is not incompetent to be submitted to a jury."

In *Robertson* v. *Knapp* (35 N. Y. at p. 93) *Clark* v. *Baird* is referred to with approval, as authority for the rule that opinions are admissible " as to the value of property, in cases where the value was properly the subject of inquiry." The point of the objection in *Clark* v. *Baird* is precisely the same in principle, if not in its facts, as the one now presented.

In the early case of *Rochester, etc., Railroad Co.* v. *Budlong* (10 How. Pr. Rep. 289), which was decided in 1854, a year later than *Clark* v. *Baird*, the opinion of a witness was held competent to show what would be the injury to the appellant's farm, arising from the construction of the railroad, and what would be its diminution in value from the same cause. The General Term of the Supreme Court, at which the case was decided, was composed of Justices Selden, Welles and Johnson, and the opinion was delivered by Justice Selden. The evidence was held admissible, upon the ground that unless questions involved a subject, knowledge of which is presumed to be alike common to all men, skilled opinions were proper.

The authority of these cases has sufficed for the views of courts in other states, though it must be admitted that judges have not uniformly agreed. Some of these cases are cited in the respondent's brief ; but extended reference to them seems unnecessary. The proposition must commend itself upon obvious grounds of necessity and of right, as well as because it is sanctioned by authority in the courts of this state. But I may refer to some cases in the Supreme Court of Massachusetts, where the question has been pertinently discussed. In *Shattuck* v. *Stoneham Branch Railroad* (6 Allen, 115), where lands were taken for a railroad, testimony as to the amount of damage done to the petitioner's estate was allowed, upon the theory that where the amount of damages done to property is in controversy, opinions by persons acquainted with the value of the property may be given. It was there observed that, "as

value rests merely in opinion, this exception to the general rule that witnesses must be confined to facts, and cannot give opinions, is founded in necessity and obvious propriety ;" and the opinion cites *Clark* v. *Baird (supra).*    In *Swan* v. *County of Middlesex* (101 Mass. 173), where land was taken for widening a street, the admission of such opinions was justified upon like reasoning and "rather from necessity, upon the ground that they depend upon knowledge which any one may acquire, but which the jury may not have, and that they are the most satisfactory and often the very best attainable evidence of the fact to be proved."    It was there said: " The witnesses being competent to testify to the value of the land affected, before and after the alteration of the highway, might testify to the simple question of arithmetic which of those two values was the greater ; in other words, whether the petitioner's estate was benefited or injured."    (And see *Sexton* v. *North Bridgewater,* 116 Mass. 200.)

The decisions in our own state, which I have mentioned, have been relied upon by several text-writers.    (See Lawson on Expert and Opinion Evidence, p. 451 ; and Rogers on Expert Testimony, § 152 ; and also Wharton on Evidence, § 450.)

In Roger's work it is remarked : " That there is no such inherent distinction between questions of value and questions of damages, if from the latter is excluded all idea of any legal rule or measure of damages, as brings the one within and the other without the province of the opinion of witnesses." And in Wharton's work it is remarked, with respect to the facts upon which a witness bases his opinion as to the depreciation in value, that " when, as is often the case, these facts can be best expressed by the damage they cause, then this damage and its extent may be testified to by witnesses."    The following authorities are in point and may be referred to in connection with this discussion : *Snow* v. *Boston & Maine R. R. Co.* (65 Maine, 230, 231) ; *Keithsburg, etc., R. R. Co.* v. *Henry* (79 Ill. at p. 294) ; *White Deer, etc., Co.* v. *Sassaman* (67 Penna. St. 415) ; *Snyder* v. *W. U. R. R. Co.* (25 Wis. pp. 66, 70) ; *Lehmicke* v. *St. Paul, etc., R. R. Co.* (19 Minn. 464).

As against the weight of authority in the cases of *Clark* v. *Baird* (*supra*) and *Rochester, etc., Railroad* v. *Budlong* (*supra*), I find no case, since, in this court, which compels a different view.

*Van Deusen* v. *Young* (29 N. Y. 9) was an action of trespass for damages caused by cutting down and taking away trees from land, and a witness was asked "Would the farm be worth more or less with the timber cut off?" The impropriety of this question was deemed to exist in its being irrelevant to the issue and as calling for a speculative opinion. Clearly, this is not authority for the case at bar. Judge MULLIN, who delivered an opinion in the case, in discussing the competency of opinion evidence as to value, most pertinently says : "There are cases in which it is necessary to put to the witness the very question, how much damages the plaintiff has sustained by reason of the act or neglect of the defendant. These are cases in which no data can be given which could enable a jury to arrive at the measure of damages, because the amount of the damage is known and can be properly appreciated and measured only by persons of skill in the business or matter to which the damage in the case relates. For a full and accurate examination of the cases on the question, see *Clark* v. *Baird* (5 Seld. 183)."

*Marcly* v. *Shults* (29 N. Y. 356) was an action for damages for the overflowing of the plaintiff's land from a mill dam, and a question discussed related to the offer to ask the plaintiff, himself a witness, what the value of the use of the house was per annum before the raising of the dam. This was deemed objectionable because the value of the rent was not important, "except argumentatively." It was remarked, however, that "if the house had been kept for renting, and something in the nature of a market price for the use could have been proved, it might have been competent."

*Teerpenning* v. *Corn Exchange Insurance Company* (43 N. Y. 279), was an action on a policy of insurance for the loss of goods by fire, and cannot be deemed to be, either in facts or in principle, controlling. *Clark* v. *Baird* is there cited with

this observation, " that upon questions of value, the opinions of witnesses are admissible, but with the qualification that the witnesses must have peculiar knowledge of the article in question and its value."

I do not think other authorities cited from the decisions of this court call for discussion, until we come to the recent cases of *McGean* v. *Manhattan Railway Company* (117 N. Y. 219) and of *Avery* v. *New York Central and Hudson River Railroad Company* (121 id. 31).

The first of these cases might be deemed, upon a cursory consideration, decisive of a contrary view. The decision of that case, however, did not turn, nor depend upon the point as to the competency of the evidence as to value, nor was the question altogether the same as in the present case. There was no discussion by counsel of the point, except in the brief of the appellant's counsel, and the case of *Clark* v. *Baird* was not alluded to at all. The case was affirmed upon other considerations; and, as our decision did not involve any necessary determination as to the principle of evidence in question, there is no valid or just reason why we should be limited in our present discussion by the *McGean* case; especially when the point becomes important and the determination of the question essential.

In the other case of *Avery* v. *Railroad Company* the plaintiff was a witness and he was asked this question : " Do you know what the rental value of your property, real and personal, would have been, between the 10th day of September, 1881, and the 28th day of January, 1884, if there had been a sufficient opening kept and maintained by the defendant opposite to your hotel for the convenient access of passengers and their baggage to and from the twenty-foot strip of land lying south of the hotel ? " The propriety of such a question was denied upon several grounds. It was held that the witness had not been shown to be qualified to give such an opinion, and that the question assumed the insufficiency of the opening. It was said that it was an attempt " to prove through the witness that he was prejudiced by the existing condition of things as to the

opening in the fence, and, under the guise of giving his knowledge, to elicit his opinion that the value of his business to him would have been greater if something different in the way of an opening had been maintained." Therefore, and on the strength of authorities mentioned in the opinion, the question was condemned as usurping the province of the jury. There was no question, nor discussion, as to the competency of expert evidence, or as to opinions of persons possessing a knowledge of a subject which, in its nature, is peculiar and cannot be assumed to be common to all. The plaintiff was conducting a hotel and a restaurant business, and was a lessee of the premises. Whether his business was injured or not was the subject of definite knowledge and capable of being testified to by exact data.

The present case, therefore, differs in its facts, as in its principles, from the cases relied upon, and is only appositely met by the authorities of *Clark* v. *Baird* (*supra*) and *Rochester Railroad* v. *Budlong* (*supra*). Here we have a new structure in the streets, which was a perversion of a street use, and which the legislature could not authorize, nor sanction, without providing for compensation to the abutting property owners for the value of the appurtenant easements appropriated, if shown to have a value to him greater than any particular benefit conferred upon his estate by the presence of the structure. How, in the nature of things, is such a matter susceptible of exact proof by facts? Is not the effect upon the plaintiff's estate from the presence of the defendant's structure and its operation of trains, and any damage sustained thereby, best shown by receiving in evidence the opinions of those persons, who, by reason of experience, observation and familiarity with the various and more or less inexact and indefinite causes, which operate upon real estate values, are skilled, or expert upon the subject? How can the value of the property, if enjoyed in a usual manner and if subjected to ordinary street uses, be ascertained except by way of such evidence?

There is no application of any new principle of evidence; *Clark* v. *Baird* is sufficient authority for the reception of

opinions in evidence upon questions of value and damage. But there is, in a changed and new condition of things, a new reason for the admission of expert opinions as to the extent of damage sustained by an abutting land owner from the presence of these elevated railroads. This court has decided that this structure destroyed the ordinary use for which a street was intended, and appropriated certain easements of the abutting property owners, wherefore they should make compensation in damages for any injury which may be proved to have been suffered. Is not that injury, under the extraordinary circumstances of the case, more intelligently proved through the opinions of persons shown to be competent to express such opinions?

The witness' evidence does not conclude the court or jury, and it is still left to them to decide, with the aid of such skilled opinions, as to the measure and the amount of damages which should be awarded by way of compensation. And if the witness is asked for his opinion as to the extent to which the plaintiff's estate has been damaged, it seems an over-refinement of argument to deny the propriety of allowing him to state the result of a mere subtraction of the values assigned to the premises with and without the structure. The judgment of the court, or of jurors, is not limited to the opinions given, but is formed from the consideration they may give to the evidence, and is simply aided by the information they may have derived from the skilled opinions in the case.

Upon the grounds of superior convenience, of necessity and of an obvious propriety, and if we would have intelligent and just decisions of such issues, I think the evidence objected to is admissible in such cases, and, therefore, that the judgment below should not be reversed for the errors alleged.

All concur with PECKHAM, J., except RUGER, Ch. J., and GRAY, J., who dissent.

Judgment reversed.