The Rochester and Syracuse Railroad Company agt. Budlong.

## SUPREME COURT.

THE ROCHESTER AND SYRACUSE RAILROAD COMPANY, Respondents, agt. MILTON BUDLONG, Appellants.

What are the principles upon which the *opinions* of witnesses are received as evidence, upon the trial of issues of fact?

The general rule, that testimony should consist of facts, and not opinions, is conceded by all. The difficulty lies in defining the *exceptions* to this rule, and the foundations upon which they rest.

The most prominent class of exceptions, is that of cases involving questions of *science* or *skill*, or relating to some *art* or *trade*, in which *experts*, or persons interested in the particular science or art, and they alone, are permitted to give opinions. What are the particular arts or trades which fall within this exception?

*Held*, that upon all questions, except those, the knowledge of which *is presumed to be alike common to all men*, whatever may have been their education or employment, the opinion of persons skilled in the particular subject to which the question relates, is admissible.

Every business or employment, *which has a particular class devoted to its pursuit*, is an art or trade within the meaning of the rule.

Another principle, entirely distinct from that upon which experts are admitted, which leads to the reception of opinions in evidence in a numerous class of cases, is, the impossibility of adequately describing, in language, matters and scenes which have been previously presented to the personal observation of the witness. Among this class, may be included questions relating to *handwriting*—sometimes the *value* of articles, such as household furniture, and domestic animals—whether a deceased person was *physically capable* at a certain time, of subscribing his name to a will—the *age* of a person—*attachment* existing between parties, in an action for breach of promise of marriage, &c.

But while opinions are uniformly received upon a question of *value*, can they ever be received upon a question of *damages*

*Held*, that in many cases the two questions are *identical*—that is, the amount of damages depends entirely upon a question of value. And there is no such inherent distinction between questions of value and questions of damages, if from the latter is excluded all idea of any *legal rule or measure* of damages, as will bring one within and the other without the province of opinions from witnesses.

If the rule, that whenever *opinions* are resorted to, the *facts* upon which the witness bases his opinion should in all cases be given, were strictly observed, there would probably be less hostility, both at the bar and on the bench, to their admission.

In this case, the questions put to the witness, preceded by a full statement in

regard to the competency of the *witness* to give an opinion, and of all the facts upon which that opinion was founded, were as follows :

1. Will you state what, in your opinion, will be the *injury* to the residue of Budlong's farm, occasioned by the construction of the proposed railroad through it ?

2. State, if you can, what would be the *diminution in value* of the two fields north and south of the proposed railroad, by the construction thereof?

*Held*, that they were proper. One related to the whole, and the other to a portion of the farm; otherwise they were identical. There was no difference between an inquiry as to the *damage* or injury which would be done to the land by the construction of the road, and as to its *diminution in value* in consequence of such construction.

*Monroe General Term, December,* 1854.

WELLES, JOHNSON and SELDEN, *Justices.*

THIS is an appeal from the appraisal of certain lands belonging to the appellant, by commissioners appointed by this court pursuant to § 15 of the general railroad act passed April 2, 1850.

Upon the hearing before the commissioners, a witness called by the appellant, was asked, what would be *the injury* to the appellant's farm arising from the construction of the respondent's road; and what would be its diminution in value from the same cause ? These questions were objected to by the respondents, and excluded by the commissioners.

E. DARWIN SMITH, *for appellant.*

ORLANDO HASTINGS, *for respondents.*

By the court—SELDEN, Justice. Were the questions proposed properly overruled ?

This inquiry calls for an examination of the principles upon which the *opinions* of witnesses are received as evidence upon the trial of issues of fact. I shall not attempt any elaborate analysis of the doctrines advanced in the numerous and conflicting decisions upon this subject, but shall content myself with noticing a few of the leading ideas connected with it.

The general rule, that testimony should consist of facts, and not opinions, is conceded by all. The difficulty lies in defining the exceptions to this rule, and the foundations upon which they rest.

The most prominent class of exceptions is that of cases involving questions of science or skill, or relating to some art or trade, in which experts, or persons instructed in the particular science or art, and they alone, are permitted to give opinions. The reasons for this class of exceptions are obvious. But, what are the rules by means of which we are to ascertain its extent? What are the particular arts or trades which fall within the exception? There must, of necessity, be some general rule, by which this is to be determined. To confine the exceptions to a few only of the more prominent professions or trades, would do violence to the principles which led to its adoption. The exception should, of course, be co-extensive with the reasons upon which it is founded.

In a community like ours, where almost every man has his own peculiar pursuit, to which he devotes his time and his thoughts, it is apparent, that in a large portion of the cases which arise, there must be a class of individuals, far more capable of forming an accurate opinion upon the facts of the case, than persons taken indiscriminately from the common walks of life. To deny to a court or jury, under such circumstances, the aid to be derived from the opinions of competent witnesses, is to deprive them of the light by which alone they can be guided to a just conclusion.

It follows, that upon all questions, except those, the knowledge of which *is presumed to be alike common to all men*, whatever may have been their education or employment, the opinion of persons skilled in the particular subject to which the question relates, is admissible.

The boundaries of the exception in question, are the same as those which limit the division of occupations. Every business or employment, *which has a particular class devoted to its pursuit*, is an art or trade, within the meaning of the rule.

But there is another principle, entirely distinct from that upon which experts are admitted, which leads to the reception of opinions in evidence. It is this. It is frequently impossible, in the nature of things, to describe, in language, an absent scene or object, so as to enable the hearer to form the same

clear conception and judgment in regard to it, as if it were present to his senses.

The cases in which opinions are received upon this ground, are numerous. Questions relating to handwriting, may be included in this class. Were it possible for the witness to give a perfect description of the image impressed upon his memory, there would be no necessity for an opinion. Questions of value, too, belong sometimes to the same class. If they relate to the value of wheat, corn, flour, or other article of merchandize, which is referable to a common standard; it is sufficient if the witness be a dealer in this article, or otherwise instructed as to its value—that is, an expert. But, if the article belong to a class, the individuals of which admit of a great diversity, as for instance, that of domestic animals, or household furniture; no one can, in general, testify as to its value, except one who has seen the particular thing.

There are many other cases, in which the opinions of witnesses will be received, on the ground of the superior advantages which a personal observation of the facts affords. For instance, suppose it to become a material question, whether a deceased person was physically capable, at a certain time, of subscribing his name to a will. A witness who had been constantly with him, immediately before and after the precise time, with opportunity for closely observing all his actions, might, I think, give his opinion upon the question, and that from the necessity of the case. It would obviously be impossible, by any *mere description* of the appearance and conduct of the person, to convey to the jury any precise idea as to the degree of his weakness.

To reject the judgment of an eye witness, in such a case, would be to reject the evidence *best calculated* to throw light upon the subject of inquiry.

Again, suppose it to become important to ascertain the age of a person concerned in some past transaction. A very brief attempt to describe the marks, by which the question must be determined, would be likely to satisfy any one of the necessity of resorting to the opinion of the witness.

It is upon this principle, that in an action for breach of promise of marriage, a witness living with the plaintiff has been allowed to give an opinion as to the degree of attachment existing between the parties. (*M'Kee* agt. *Nelson*, 4 *Cow. R.* 355.) The same rule has been applied to an action for criminal conversation. (2 *Stark. R.* 191.)

It will be found, if the subject is carefully investigated, that the class of cases in which opinions are to be received upon this ground, viz. : the impossibility of adequately describing, in language, matters which have been previously presented to the personal observation of the witness, is very numerous.

But all this is merely preliminary to my main object, which is, to examine the foundation of the rule, so often repeated, and so frequently misunderstood, that while opinions are uniformly received upon a question of value, they can never be received upon a question *of damages.*

It is clear, that in many cases the two questions are identical; that is, the amount of damages depends entirely upon a question of value. For instance, in an action upon the warranty of a horse, proved to have a certain defect warranted against, a witness competent to testify, may be asked, first, the value of the horse as he is ; then, what would be his value, in case he was as warranted,—leaving to the jury the important intellectual process of subtracting the one from the other; or this process may be performed by the witness, who may then give the result. The difference constitutes the damages in the case.

Why, then, may not the question be, what damages has the plaintiff sustained by reason of the breach of the defendant's warranty ? It is certain that the answer, if correct, must be precisely the same as to the previous question ; and yet the question *in this form* would be improper, for the reason that it involves a *question of law. Damages* is a legal term ; and *the rule* of damages is, in all cases, a question for the court; an answer to a question, as to the amount of damages *in a suit*, must necessarily assume what is the rule or measure of damages, and is therefore inadmissible.

But, in the case supposed, if the question be so framed as to call for the difference in value of the horse, and nothing else, it is no objection to it that the word *damages* is used. As for instance, what is the amount of the damage or injury *to the horse*, arising from the defect? It would be absurd to exclude this question, as calling for an opinion as to damages, and not as to value. The difference is merely verbal.

There is clearly no such inherent distinction between questions of value and questions of damages, if you exclude from the latter all idea of any legal rule or measure of damages, as will bring one within and the other without the province of opinions from witnesses. Every one who has had much experience in judicial trials, knows, that in most cases brought for the recovery of unliquidated damages, the opinion of witnesses enters, of necessity, as a large ingredient into the evidence which enables the jury to estimate the damages.

If the rule, that whenever opinions are resorted to, the facts upon which the witness bases his opinion should in all cases be given, were strictly observed, there would, I think, be far less hostility, both at the bar and on the bench, to their admission. Where this is done, the jury have all the means of forming an *independent judgment*, which the case affords, together with all the aid they can derive from the opinions of those conversant with the subject.

In the case of *Grant* agt. *Thompson*, (4 *Conn. R.* 203,) which was an action upon a promissory note, to which the defence of lunacy was interposed, the court held, that witnesses *not professional* might give their opinions, provided, in connection with them, they also gave *the facts upon which they were founded*.

In *Rambler* agt. *Tryon*, (7 *Serg. & Rawle*, 90,) the court say " opinion is no evidence without assigning the reason of such opinion; the jury are to judge of the correctness of the opinion from the facts and reasons stated by the witnesses."

So in *Morse* agt. *The State of Connecticut*, (6 *Conn. R.* 9, 13,) the question was as to the age of an individual, at a certain time—whether under or over twenty-one. The naked

The Rochester and Syracuse Railroad Company agt. Budlong.

opinion of a witness was rejected ; but the court thought, that if he had *stated the facts* indicative of the age, and then followed with an opinion founded upon those facts, it would have been admissible.

These cases show how far the courts will go in the reception of opinions, when the danger of being misled by them is guarded against, by a full statement of the facts upon which they are based. In many of the cases where opinions· have been rejected, they would, I think, have been received, if accompanied by such a statement of the facts ; as, for instance, in the cases of *Norman* agt. *Wells*, (17 *Wend*. 136 ;) *and Harger* agt. *Edmonds*, (4 *Bar. S. C. R.* 256.)

In the present case, no such difficulty arises. The questions put and excluded were preceded by a full statement in regard to the competency of the witness to give an opinion, and of all the facts upon which that opinion was founded. The questions were as follows :

1. Will you state what, in your opinion, will be the injury to the residue of Budlong's farm, occasioned by the construction of the proposed railroad through it ?

2. State, if you can, what would be the diminution in value of the two fields north and south of the proposed railroad, by the construction thereof ?

These questions related, one to the whole farm, and the other to portions of it only. In other respects, they were identical. There is no difference between an inquiry as to the *damage* or injury which would be done to the land, by the construction of the road, and as to its *diminution in value* in consequence of such construction. What, then, were the grounds upon which these questions were overruled ? I can conceive of only two.

1. That, while opinions from competent judges are admissible as to the *present* value of lands, a hypothetical opinion as to their future value, founded upon a supposed state of facts, is not within the rule, and cannot be received.

2. That the questions put were, in substance, inquiries as to the amount of damages which would accrue from the construc-

tion of the road, and that opinions are not admissible upon a question of damages.

The first of these objections is clearly untenable. It is frequently necessary to resort to this species of evidence. In actions on the case for personal injuries, by accidents upon railroads, it is the constant practice to receive the opinions of physicians as to the probable consequences of such injuries.

In the case of *Smith* agt. *Gugerty*, (4 *Bar. S. C. R.* 614,) which was an action for the non-performance of a building contract, a house mason was permitted to give his opinion " whether or not the buildings, *if finished by* the 20th of October, *would have been* fit for occupation on the 1st of November following." This was not only an opinion founded upon an hypothesis, but upon a supposed state of facts that never did, and never could exist.

But it is probable, from the course of the argument upon the appeal, that these questions were overruled mainly upon the ground that opinions are not admissible upon a question as to damages.

If I have been at all successful in what I have attempted, I have shown that the idea that opinions are not to be received upon a question of damages, is a fallacy. It has arisen from the fact, that questions upon that subject have been sometimes so framed as to embrace the legal rule or measure of damages, and at others, so as to include too many particulars, upon *some* of which the jury might be as competent to judge as the witness ; or, if not, particulars which should be given to the jury in connection with the opinion, to enable them properly to estimate its value.

In this case, if the opinions of men acquainted with lands, and with the business of farming, were important and valuable to the commissioners in determining the present value of the lands in question, they were equally so in ascertaining their prospective value, which would depend upon a variety of considerations, the force of which, persons trained to the business of cultivating the soil could best appreciate. The questions

put and overruled were proper, and should have been admitted and answered.

The report of the commissioners must be set aside, and a new appraisal ordered before new commissioners, to be appointed at a special term.