Wray v. Railroad.

W. A. WRAY *et ux. v.* KNOXVILLE, LAFOLLETTE & JELLICO RAILROAD COMPANY.

*(Knoxville.* September Term, 1904.)

1. **EMINENT DOMAIN.** Compensation provided by constitution, and incidental damages lessened by incidental benefits provided by statute.

Just compensation for property taken for public use is provided for by the constitution, and incidental damages lessened by the incidental benefits are creatures of statute, and are in addition to the compensation provided by the constitution, and separate from it. (*Post, pp.* 549-551.)

Code cited and construed: Sec. 1857 (S.); sec. 1562 (M. & V.); sec. 1338 (T. & S. and 1858).

Constitution cited and construed: Art. 1, sec. 21.

Cases cited and approved: Woodfolk v. Railroad, 2 Swan, 437; Railroad v. Love, 3 Head, 67; Memphis v. Bolton, 9 Heisk., 508, 509; Railroad v. Stovall, 12 Heis., 5; Alloway v. Nashville, 88 Tenn., 513.

2. **SAME.** Rule for ascertaining compensation.

The measure of compensation for land taken for public use is a fair cash value of the land, considering that the owner is willing to sell and the other party desires to buy that particular quantity, at that place and in that form, but in estimating its value, all the capabilities of the property, and the uses to which it may be applied or for which it is adapted are to be considered. (*Post, pp.* 548-555.)

Cases cited and approved: Woodfolk v. Railroad, 2 Swan, 422; Railroad v. Love, 3 Head, 67; Memphis v. Bolton, 9 Heis., 509; Railroad v. Stovall, 12 Heis., 5; Alloway v. Nashville, 88 Tenn., 513; McKinney v. Nashville, 102 Tenn., 132.

Wray v. Railroad.

3. **SAME. Same. The specific identical land taken must be valued.**

The only way to arrive at the cash market value of property taken for public use is to estimate the specific identical land taken, by placing a value on it, which can only be done by a statement of facts and by opinions and estimates of parties acquainted with the land, and upon such facts, opinions and estimates of the land must the valuation be based. (*Post, pp.* 553, 554.)

4. **EVIDENCE. Opinions or estimates as to value of land are competent.**

The opinions or estimates of witnesses as to the value of real estate are admissible, but they should state the facts upon which the opinions or estimates are based. (*Post, pp.* 555, 556.)

Cases cited and approved: Woodfolk v. Railroad, 2 Swan, 437; Tompkins v. Wisener, 1 Sneed, 458; Norton v. Moore, 3 Head, 481; Wisener v. Maupin, 2 Bax., 359; Kirkpatrick v. Kirkpatrick, 1 Tenn. Cas., 258.

Case cited and disapproved or overruled: Railroad v. Stovall, 12 Heis., 1.

5. **EMINENT DOMAIN. Incidental damages to remaining property must be allowed.**

The incidental damages to the remaining property resulting from the taking of land for public use that do not attach to other property by the construction of the improvement, as the building of a railroad, must be allowed. (*Post, pp.* 556, 557.)

6. **SAME. Same. Destruction of railroad frontage to remaining property is basis for incidental damages, when.**

The incidental damages to the remaining land resulting from the taking for public use by cutting it off from an existing railroad frontage, and destroying or impairing its usefulness for manufacturing sites, must be allowed. (*Post, pp.* 555, 558.)

113 Tenn—35

7. **SAME.** What jury should consider in determining value of land taken for public use.

In determining the value of land taken for public use, the jury should consider the opinions or estimates of witnesses, as well as the facts which they state, and give their verdict upon a fair consideration of the opinions or estimates, as well as the facts on which they are based. (*Post, pp.* 553, 554, 558.)

8. **EVIDENCE.** Tax assessment blank is inadmissible to prove value, where part only is taken from public use.

A paper purporting to be an assessment blank or schedule for the purpose of taxation in the tax assessor's office, proved to have been handed in by the husband of the complainant, containing the valuation of a number of lots, including the lot, a part of which was condemned and taken for public use, but not showing the separate value of the particular part of said lot so condemned and taken, and purporting to be signed by the complainant, but without proof of her signature, is not admissible or competent to prove the value of the land so condemned and taken. (*Post, pp.* 559, 560.)

9. **JUDICIAL NOTICE.** That land is not assessed at its actual value for taxation.

The courts know judicially and as a part of the financial history of the State that land is never assessed for purposes of taxation at its real cash market value, though that may be the law, but only in comparison with other lands around it. (*Post, p.* 560.)

---

### FROM KNOX.

---

Appeal from the Circuit Court of Knox County.— JOSEPH W. SNEED, Judge.

SHIELDS, CATES & MOUNTCASTLE, and JOHN W. GREEN, for Wray and wife.

CORNICK, WRIGHT & FRANTZ, for Railroad.

MR. JUSTICE WILKES delivered the opinion of the Court.

This is a proceeding to condemn lands for railroad purposes under the exercise of the power of eminent domain. The case has so far proceeded that the matter now in controversy is the compensation to be paid for the land taken and the damages to the remainder of the two separate lots involved.

The jury returned a gross verdict for the appellants, Wray and wife, for $1,575, and they have appealed to this court and assigned errors which will all be disposed of in a general way.

The property sought to be appropriated is a part each of two vacant lots in Dameron's addition to Knoxville, fronting each 227 feet on the right of way of the Southern Railway Company, and extending back through parallel lines about 295 feet. The portions sought to be taken adjoin largely the right of way of the Southern Railway Company, and are said to be valuable for manufacturing sites. The rear portions of the lots are represented to be small bluffs, rocky and rough. A creek runs through the lots about half way from front to rear. The strip sought is thirty feet wide, and extends along the front of each lot. This strip of thirty feet cuts off

the balance of the lots from the right of way of the Southern Railway Company, and indeed a good portion of the level portions of the lots. The landowners, Wray and wife, propounded the following question to witness Sexton and others in order to arrive at the value of the property taken:

"Suppose that the defendants, Dr. Wray and his wife, wanted to sell and the railroad wanted to buy a strip of land thirty feet wide off said lots, beginning at Baxter avenue and running along the right of way of the Southern Railway Company 237 feet, what would be the reasonable cash market value of that quantity of land taken in that place and in that form, without taking into consideration any damages or benefit that might arise to the balance of the land by reason of said sale?"

The question and the answer were objected to by the railroad company, and the objection sustained, and both were excluded.

This question was repeated, and as often ruled out.

The court ruled that the question should be put in the following manner, and he charged the jury to find upon that basis:

"You are to arrive at the value of the property taken by considering what was the cash market value of the entire property in September, 1903, when it was taken for railroad purposes. After that is found, you are to ascertain what the market value of the remaining portion of the land was after cutting off the right of way, and whatever difference that makes in the actual value

of the property taken, and the amount is to be allowed without deduction or being affected in any way by incidental damages or incidental benefits." The court said: "I have to instruct you now about the manner in which you are to do that. It is by considering the cash market value of the property at the time it was taken, just before it was taken, and then what it was worth just after; and the law conclusively presumes that the land taken is worth something, and common sense would also dictate that, because the parts of anything are bound to be worth less than the whole." And again: "The actual value of the land taken shall be arrived at in the manner in which I have told you, but you are to consider the form in which it is taken—the manner in which it is taken; and you do that by considering its market value, both before and after taken, at that place and in that manner in which it is shown by the evidence to have been taken."

This illustrates the different modes by which counsel for the landowner and the court and counsel for railroad proposed to test the question of the real market value of the land. All concede that the landowner is entitled to just compensation for the land actually taken, and, in addition, to the damages to the balance of the land, and that these are separate and distinct items, and must be kept separate and distinct, and neither allowed to affect or influence the amount of the other.

The difference between the counsel for petitioners and

the court is the manner in which this cash market value is to be ascertained; counsel for petitioners insisting it must be arrived at from proof of facts and opinions of witnesses as to the value of the land taken, considered in the form and at the place taken, while the court held in substance that the whole tract must be first valued at what it was worth before the railroad touched it and again after the right of way was carved out, and the difference would represent the value of the part taken and appropriated. Both parties agree that incidental benefits and dangers should be excluded in making the estimate. Counsel for the railroad company have cited a large number of cases from other States in which it appears that the rule and manner adopted by the trial judge was approved. We need not consider these cases, but must decide the question under our constitution and statutes, and in the light of our own adjudications. The provision of our constitution (article 1, section 21) is that "no man's property shall be taken or applied to public use without the consent of his representatives or without just compensation being made therefor."

The rule laid down by statute is (Shannon's Code, sec. 1857): "In estimating the damages the jury shall give the value of the land without deduction, but incidental benefits which may result to the owner by reason of the proposed improvement may be taken into consideration in estimating the incidental damages." It is evident that compensation for the land actually taken as well as damages to the remainder of the tract, are

here embraced under the general designation of damages. Still they are separate, distinct, independent, substantive things, which must not be confused or considered in connection, except as separate items, making a gross total which is inaptly denominated "damages."

It will be noted that just compensation for property taken is provided for by the constitution. Incidental benefits and damages are creatures of statute, and are in addition to the compensation provided by the constitution and separate from it. *R. R.* v. *Stovall,* 12 Heisk., 5; *Memphis* v. *Bolton,* 9 Heisk., 508; *Woodfolk* v. *R. R. Co.,* 2 Swan, 437.

Keeping this in view, we proceed to consider first the rule to be observed in ascertaining the cash market value of the property to be appropriated as a right of way.

The leading case in this State is that of *Woodfolk* v. *N. & C. R. R.,* 2 Swan, 422. It was argued by five of the greatest lawyers Tennessee ever produced; Return J. Meigs, Edwin H. Ewing, and Wm. F. Cooper for the plaintiff in error, and Francis G. Fogg and John Trimble for defendants in error. Caruthers, J., delivered the opinion of the court.

The court was duly impressed with the importance of the decision and said: "It now devolves upon this court to settle the law, and indicate the proper rules for this and all other cases of the kind, and there will doubtless be many in the future, as the spirit of public improvement has now taken possession of the minds of

the people and guides the public counsel of the State. They should be such as will guard the right of the citizen on the one hand and not improperly impede the cause of public improvement on the other."

After fully presenting the question and forcibly stating it, the court said: "We consider the proper rule to be this: that the fair cash value of the land taken for public use, if the owner was willing to sell and the company desired to buy that particular quantity at that place and in that form, would be the measure of compensation. It is not in the nature of a wrongful taking for which damages are to be assessed. Nor is it a claim for any wrong or damages done, but the appropriation of the property is legal and rightful, as much so as if the owner had voluntarily sold it to the company, and the only open question was, what is a fair price for the property? What is its value?" Again: "Incidental advantages and disadvantages, benefits and injuries, are to be left entirely out of view in making this estimate. The owner's unwillingness to sell, or the location of the road on his land or near his home on the one hand, and the necessity the public is under to have the land at the particular place on the other, are to have no influence on the price. The property is to be valued on the same principles and considerations as if both parties had agreed upon the sale and had referred the single question of the intrinsic value of that particular property to the commissioners."

The court proceeds: "Here the constitutional pro-

vision ends.   The legislature may make any regulations it thinks right and proper for an account or estimate of incidental loss or damages or injury to the landowner. And against this may be set off the benefits and advantages," etc.

This rule has been approved and followed ever since, and the leading case is cited in *East Tenn. & Va. R. R.* v. *Love,* 3 Head, 67; *City of Memphis* v. *Bolton,* 9 Heisk, 509; *R. R.* v. *Stovall,* 12 Heisk., 5; *Alloway* v. *Nashville,* 88 Tenn., 513, 13 S. W., 123, 8 L. R. A., 123.

It is the rule approved in Lewis, Eminent Domain section 478; Cooley's Const. Limitations (5th Ed.). 699,

In estimating this value all the capabilities of the property and the uses to which it may be applied or for which it is adapted are to be considered, etc.   Lewis on Eminent Domain, sec. 478; *Alloway* v. *Nashville,* 88 Tenn., 510, 13 S. W., 123, 8 L. R. A., 123; *McKinney* v. *Nashville,* 102 Tenn., 132, 52 S. W., 781, 73 Am. St. Rep., 859.

The learned counsel for the railroad and learned trial judge concede the correctness of this view and holding, but differ as to the manner in which this cash value shall be ascertained.

We are of opinion the only way to arrive at this cash market value is to estimate the specific, identical land taken by placing a value upon it.   This can only be done by a statement of facts, and by opinions and estimates of parties acquainted with the land and upon

such facts, opinions, and estimates of the land must the valuation be based.

By the rule laid down by the learned trial judge the specific land taken is never valued. He directs the witnesses to value the whole tract, including the right of way, and then to value the remainder of the tract, excluding the right of way, and they are never permitted to value the land actually taken, but only to infer, by a process of subtracting the value of the remainder from the value of the whole tract, what is the value of the part taken. But the witnesses were not permitted to value the land taken, and this is what the law says they shall do.

Under the rule laid down by the learned trial judge we think it would be practically impossible for the witnesses to keep the matter of compensation separate and distinct and unaffected by the question of incidental benefit and damages, both general and special.

Again, we think there are a large number of cases where witnesses could very truthfully say that cutting off the right of way would not affect the value in the market of the balance of the lot or land, and in that event the landowner would get nothing for the land taken. Other difficulties suggest themselves, but we need go no further than to say that under the rule of the trial judge the right of way is never valued, except inferentially—never estimated in and of itself, but only as a remainder, arising out of two other estimates; one including the right of way, and the other excluding it

from the tract as a whole. We think the question put to the witness and denied by the court was correct and should have been answered. Counsel may very well have added to it the caution to the witness to look to the entire property, and to the uses to which it is put and the uses to which it is adapted. This might have been added in the same, or put in an additional, question; but the question as put was correct, and should have been allowed to be answered.

On the other hand, the rule outlined by the learned trial judge in passing upon the testimony, and the rule laid down by him in his charge, as to the mode or manner of arriving at the actual cash value of the property taken, is incorrect for the reasons stated.

The second assignment is that the court did not allow witnesses to state that in their opinion the lots were injured by the taking of the right of way at the place and in the form taken. The witness would have replied that the lots were injured five dollars per foot on the railroad front, because they were thus cut off from a frontage on the Southern Railway, and the value of the lots as manufacturing sites was destroyed or impaired. It is true that quite a number of States have held that witnesses cannot give their opinions direct as to the damages caused to lots by reason of the taking of the right of way. But equally as many have held such evidence competent. There is a full resume of authorities in Lewis on Eminent Domain, section 436. It is also true that in *Railroad* v. *Stovall*, 12 Heisk., 1, this court

affirmed the charge of the lower court holding that such
opinions were not competent; but in the case of *Wood-
folk* v. *R. R.*, 2 Swan, 437, such opinions were treated
as competent. Selden, J., in *Rochester R. R. Co.* v.
*Budlong,* 10 How. Prac., 289, says there is no reason
why opinions are not competent as to damages to the
same extent and for the same reason they are competent
as to value.

The general rule of evidence is that opinions of wit-
nesses who are not experts are not competent, but there
is also a general rule that the opinions of a witness
founded upon observation and knowledge are admissi-
ble. But the witness should give the facts upon which
he bases his opinion. *Norton* v. *Moore,* 3 Head, 481;
*Wisener* v. *Maupin,* 2 Baxt., 359; *Tompkins* v. *Wisener,*
1 Sneed, 458; *Kirkpatrick* v. *Kirkpatrick,* 1 Tenn. Cas.,
258. Opinions as to the value of real estate are uni-
versally admissible. See authorities in 12 Am. & Eng.
Enc. Law (2d Ed.), p. 482, and cases cited.

"Opinion" in such case is synonymous with "esti-
mate," and an estimate of value as well as of damages
may be made by one familiar with the facts, who states
the facts upon which he bases his estimate. We think
the court should have allowed the facts to be shown
bearing upon the question of incidental damages and
benefits to this property that did not attach to other
property by construction of the road, and should also
have heard the opinions or estimates of witnesses based
on these facts. That there may be incidental benefits

that pertain alone to the land affected is stated in a number of cases.

Such benefits may consist in the location of a depot on the land, or in the preservation of the land by the cuts and embankments, and other matters. See Lewis on Eminent Domain, sec. 476. And the incidental damages may consist in the necessity of new fences and walls, the removal of outbuildings, or the danger or inconvenience of getting to them, or to wood or water, and many other things. Lewis on Em. Domain, sec. 496. In this case it is claimed that an incidental damage was the destruction of valuable frontage on the Southern Railway right of way.

We are of opinion the learned trial judge went too far when he said to the jury: "You have a right to pay more regard to one witness than another [so far as he was correct, but he continues], and you have a right to disregard them all if you see proper to do so. It is your judgment, in other words, that the law seeks, and the opinions of witnesses are but advisory to the jury in reaching a proper and correct conclusion."

Now, taking this language literally, the jury was instructed that it could disregard all the evidence of witnesses and find a verdict upon their own judgment. It is evident that, if the jury should disregard all the witnesses, they would have nothing but their own knowledge to base a verdict upon. Unlike a jury of view, they are not shown the premises, nor is any one or all of them at liberty to use his personal knowledge of them.

Evidently the trial judge meant to say to the jury that they might disregard the opinions of the witnesses, and form their own judgment from the facts stated by the witnesses; but they could not disregard all the witnesses and all their statements, for in that event there could be no legitimate basis for a verdict. The true rule is that the jury should consider the opinions of witnesses, as well as the facts which they state, and give their verdict upon a fair consideration of not only the opinions, but also the facts on which they are based. Petitioners, Wray and wife, insist that the strip of land sought to be taken is valuable as affording manufacturing sites, and that they are deprived of such sites when the land is taken, and that the remaining portions of the tract are damaged by the fact that the strips, when taken, cut them off from access to the Southern Railroad right of way. Now, if the facts be as contended, that the land taken is valuable because of its location to the Southern Railroad and its adaptability to manufacturing sites, these features may be taken into consideration in estimating the value of the strip taken, upon the theory that the jury may regard the place and form in which the land is taken and use to which it may be put or adapted. It may be also that special damages may be suffered by the fact that the remainder of the lots will be deprived of their access to the Southern Railroad. How all this is we do not attempt to decide, in the condition the case is now in before us. We see no reason why accurate photographs of the premises,

illustrating truthfully their location, topography, and situation, should not be shown to the jury, to be by them considered with all the other testimony in the case, but not to the exclusion of other testimony; and certainly the jury would not be permitted to form its judgment by merely looking at photographs of the premises alone.

We are of opinion that the proper plan for arriving at the damages to the remainder of the lots not taken for a right of way is to estimate the special benefits and special damages to them, leaving out of view the general benefits and damages resulting from a construction of the road.

If these special damages to each particular lot exceed the special benefits, the landowner is entitled to such excess, in addition to the value of the right of way taken.

The court allowed a paper purporting to be an assessment blank for purposes of taxation to be introduced over objection. It was proven by Mr. Smith, deputy tax assessor, that this schedule was a paper in his office; that it was handed to him by Dr. Wray, the husband of the complainant Mrs. Wray; and that it had upon it a valuation of a number of lots, embracing this one at $2,300, and purported to be signed by Mrs. Wray. Mr. Smith, the custodian, could not prove the signatures of Mrs. Wray, nor was it proven by any one else.

We think the admission as evidence of this schedule was error. The signature is not proven. The separate value of this particular lot is not shown. The law does

not require an owner to value his real estate, but merely to describe it for the purposes of assessment for taxation. The valuation, if made of the lot by the petitioner, Mrs. Wray, was for a wholly different purpose from the present one. This court knows judicially and as a part of the financial history of the State that land is never assessed for purposes of taxation at its real cash market value, though that may be the law, but only in comparison with other lands around it, and, if petitioner valued it, we would presume she placed such comparative value, instead of the real market value, upon it.

It is said in Lewis on Eminent Domain, section 448, that the assessment of property for taxation being made for other purposes, and not at the instance of either party, and not usually at the market value of the property, is not admissible as evidence of value in condemnation proceedings. See cases cited.

We think that admission of the schedule was improper.

For the errors indicated, the judgment of the court below is reversed, and cause remanded, and the railroad will pay the costs of appeal.