IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 13, 2000 Session

## CITY OF MURFREESBORO v. PIERCE HARDY REAL ESTATE, INC.

**Appeal from the Circuit Court for Rutherford County**
**No. 35319     Robert E. Corlew, Judge**

---

**No. M2000-00562-COA-R9-CV - Filed October 12, 2001**

---

This case involves a dispute between the City of Murfreesboro and a landowner over the value and the acreage of a tract of land taken by the city to be used for a greenway along the Stones River. The city appeals the trial court's denial of a motion in limine that the city filed to exclude testimony of the landowner's appraiser. The motion stated that the expert's testimony relied on an inadmissible method of valuation and should, therefore, be excluded. Additionally, the landowner appeals the trial court's ruling that the landowner did not own a .61 acre portion of the of the land taken because, as it sits at the bottom of a navigable waterway, it is not subject to private ownership.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Reversed in Part, and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Thomas L. Reed, Jr., Jerry E. Farmer, Murfreesboro, Tennessee, for the appellant, City of Murfreesboro, A Municipal Corporation in Rutherford County, State of Tennessee.

G. Sumner R. Bouldin, Jr., Murfreesboro, Tennessee, for the appellee, Pierce Hardy Real Estate, Inc.

### OPINION

The City of Murfreesboro condemned 2.36 acres of a 10.5 acre commercial tract that was owned by Pierce Hardy Real Estate, Inc. ("Landowner") and located along the West Fork of the Stones River. The city desired to take, and subsequently has taken, the land for the construction of a greenway along the river. The 2.36 acre tract is comprised of .61 acres located in the riverbed of the Stones River and 1.75 acres located along the embankment of the river. Landowner's deed describes the property as running to the center of the river. The condemned property includes land at the bottom of the river (between the centerline of the river and the riverbank), the riverbank (including sheer bluffs), and a strip across the top of the bluffs.

In the trial court, the city filed two motions which are the subject of this appeal.[1] The first was a motion to have the testimony of Landowner's appraiser excluded on the basis that the appraiser used an improper method of valuation. Landowner's appraiser planned to testify that the entire tract taken by the city was valued at $70,000.00 per acre and, since the city was taking 2.36 acres, the city owed just compensation of $165,200.00. The city's motion cited the Tennessee Supreme Court decision *Wray v. Knoxville, L.F. & J.R. Co.*, 113 Tenn. 544, 82 S.W. 471, 473 (1904), and stated that the planned testimony of the expert violated its precedent and, therefore, should be excluded. The trial judge denied this motion, and the city appeals that ruling.

The second motion filed by the city was to have the West Fork of the Stones River recognized as a navigable waterway. The city contended that, pursuant to Tennessee law, the riverbed of a navigable waterway is incapable of private ownership. Therefore, Landowner would not be entitled to compensation for that portion of the condemned land. In support of its contention, the city asserted that the U.S. Army Corps of Engineers had given public notice that the Corps had determined that the waterway was navigable. Further, the city argued, such notice was dispositive on the issue of whether the waterway was navigable and, as the federal government was asserting jurisdiction over the river, the river was navigable. The trial judge agreed, stating that "as a practical matter" because the federal government was asserting jurisdiction over the river, neither the State or a private party could claim a right to the land. Landowner appeals that ruling.

I. Standard of Review for the Trial Judge's Ruling on Expert Testimony

The first issue before this court is whether the testimony of Landowner's appraiser should be admitted. The "trial judge, of course, has very broad discretion in the conduct of a trial, and probably in no area does he have wider discretion than dealing with the . . . admission of the testimony of expert witnesses." *Shelby County v. Barden*, 527 S.W.2d 124, 131 (Tenn. 1975). In condemnation cases, a trial court is allowed wide discretion when ruling on matters related to expert testimony. *State Dep't of Transp. v. Veglio*, 786 S.W.2d 944, 947-48 (Tenn. Ct. App. 1989); *State ex rel. Moulton v. Blake*, 357 S.W.2d 836, 838 (Tenn. Ct. App. 1961). Further, Tennessee case law generally holds that the trial judge's wide discretion extends to the "admissibility of a expert testimony as to [the] value" of the land taken in condemnation cases because the weight to be given each expert's testimony is for the trier of fact. *State ex rel. Dep't of Transp. v. Brevard*, 545 S.W.2d 431, 436 (Tenn. Ct. App. 1976). Trial courts have broad discretion over the admission of all evidence concerning the value of condemned land. *City of Johnson City v. Outdoor West, Inc.*, 947 S.W.2d 855, 858 (Tenn. Ct. App. 1996). Our role, therefore, is to review the trial court's determination on the admissibility of the proposed expert's testimony regarding valuation of the land taken by the city under an abuse of discretion standard. *Veglio*, 786 S.W.2d at 948.

The abuse of discretion standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the trial court correctly identified and properly applied

---

[1] The city filed a third motion, but the trial judge's ruling on that motion was not appealed by either party in this case.

the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). While we will set aside a discretionary decision if it does not rest on an adequate evidentiary foundation, or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

## II. Motion in Limine to Exclude Testimony by the Landowner's Appraiser

When a public entity takes land by exercise of the power of eminent domain, just compensation must be paid to the landowners. Tenn. Const. art.1, § 21. Thus, the court's objective in an eminent domain proceeding is to determine and award just compensation. *Love v. Smith*, 566 S.W.2d 876, 878 (Tenn. 1978); *State v. Williams*, 828 S.W.2d 397, 400 (Tenn. Ct. App. 1992). The required "just compensation" is the fair market value, in cash, of the land actually taken, at the date of the appropriation. *Alloway v. City of Nashville*, 13 S.W. 123, 123 (Tenn. 1890); Tenn. Code Ann. § 29-17-810. "Market value" is the "price which would be paid by a willing buyer from a willing seller at the time the land was taken." *Williams*, 828 S.W.2d at 401. It is estimated as if the owner were willing to sell, but did not have to sell, and the taker desired to purchase, but did not have to purchase, that particular quantity of land at that place and in that form." *Brevard*, 545 S.W.2d at 434.

As a general rule, in determining the compensation, or the market value of the property taken, every element which can fairly enter into the question of value may be considered. 29A C.J.S. *Eminent Domain* § 119, at 316 (1992); *Alloway,* 88 Tenn. at 510, 13 S.W. at 124 (in determining market value, everything that enhances or depreciates value must be considered). In arriving at fair market value, all attributes of the property, including reasonably available uses, are to be taken into consideration, without undue emphasis on a single element in relation to general value. *Shelby County v. Stallcup*, 594 S.W.2d 392, 394-95 (Tenn. Ct. App. 1979). All of the constituent elements of the land affect its market value. *State Dep't. of Trans. v. Woods*, No. 01A01-9308-CV-00383, 1994 WL 44955, at *2 (Tenn. Ct. App. Feb. 16, 1994) (no Tenn. R. App. P. 11 application filed). While the jury is limited in awarding just compensation to the range of market values established by the competent proof, the jury is entitled to consider all relevant factors affecting the value. *City of Johnson City*, 947 S.W.2d at 860.

To meet the objective of determining fair market value, the "trier of fact must hear proof." *State v. Cox*, 840 S.W.2d 357, 363 (Tenn. Ct. App. 1991). The market value is arrived at by estimating the "specific, identical land taken by placing a value upon it. This can only be done by a statement of facts, and by opinions and estimates of parties acquainted with the land and upon such facts, opinions, and estimates of the land must the valuation be based." *Wray*, 82 S.W. at 473. Evidence of value in a just compensation case "must be restricted . . . to the general value of the land, estimated upon consideration in a single view of all its elements of value . . . ." *Brevard*, 545 S.W.2d at 434. The courts of this State have "followed a policy of liberality in admitting opinion evidence respecting the fair cash market value of real estate." *Smith v. Livingston Limestone Co., Inc.*, 547 S.W.2d 942, 943 (Tenn. 1977).

In the usual course of proceedings, the landowner and the taking authority produce witnesses, often experts, who testify regarding the fair market value of the property. *See, e.g. Smith County v. Eatherly,* 820 S.W.2d 366, 368 (Tenn. Ct. App. 1991). When an expert testifies as to the value of the land taken, "the jury is not required to accept or reject in toto the theory of either party, but may arrive at its own concept of truth and justice from the evidence." *City of Johnson City*, 947 S.W.2d at 859 (quoting *State ex rel. Shaw v. Shofner*, 573 S.W.2d 169, 174 (Tenn. Ct. App. 1978)). The jury is entitled to consider the credibility of an expert's testimony on the value of land in light of all relevant evidence. *Id.* at 859; *Chambers v. Bradley County*, 53 Tenn. App., 455, 461, 384 S.W.2d 43, 45 (1964) ("The general rule that the weight to be given expert opinion evidence is for the jury is too familiar to justify extended citation of cases.").

An expert witness qualified by "knowledge, skill, experience, training, or education" may testify to scientific, technical, or other specialized knowledge if it "will substantially assist the trier of fact to understand the evidence or to determine a fact in issue." Tenn. R. Evid. 702. A trial court may disallow expert testimony if the underlying facts or data show a lack of trustworthiness. Tenn. R. Evid. 703. The facts or data underlying the expert's opinion must be "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences." *Id.* In addition, the trial judge has "wide discretion in passing upon the admissibility of expert testimony as to value." *Brevard*, 545 S.W.2d at 436-37. Further, an expert witness is not disqualified to testify merely because he may have used some criteria in arriving at his opinion which is not altogether the standard among appraisers. *Id.*

Obviously, an appraiser's estimate of the value of the condemned portion of Landowner's property would be helpful to a fact-finder whose responsibility was to set that value. In the case before us, the city opposes the appraiser's testimony regarding value because of the methodology he used to arrive at that value. The attack does not, however, rest on a claim that the methodology is not one reasonably relied upon in the field of appraisal. Instead, the City of Murfreesboro sought to exclude the testimony of Landowner's expert on the basis that his estimate of the value of the land taken was arrived at by a method determined to be improper in *Wray v. Knoxville, LaFallette & Jellico Railroad Co.*, 113 Tenn. 544, 82 S.W. 471 (1904). In that case, the Tennessee Supreme Court determined that the trial court had used (through sustaining objections to testimony and its instructions to the jury) an incorrect method for valuing the specific land taken.

> By the rule laid down by the learned trial judge the specific land taken is never valued. He directs the witnesses to value the whole tract, including the right of way, and then to value the remainder of the tract, excluding the right of way, and they are never permitted to value the land actually taken, but only to infer, by a process of subtracting the value of the remainder from the value of the whole tract, what is the value of the part taken. But the witnesses were not permitted to value the land taken, and this is what the law says they shall do.

*Wray,* 113 Tenn. at 554, 82 S.W. at 473.

In the *Wray* decision the Tennessee Supreme Court held that an inference, or before and after, method of valuation is inappropriate. *Id.* A before and after method is one in which the value of the land is computed as the difference between the value of the entire tract of land before the taking and the value the land remaining after the taking. *Id.*[2] Thus, this method estimates any decrease in the value of the land remaining, not the value of the land taken.

The city equates the appraiser's methodology herein with the before-and-after valuation of the untaken portion of a parcel disallowed in *Wray*. We respectfully disagree with that characterization. In support for its request the city cites the *Wray* decision for the proposition that "[t]he *Wray* Court held that taking a *per acre value* for an entire tract, then subtracting the value of the remainder from the value of the whole to arrive at the value of the part taken is an incorrect method of valuation" (emphasis added). However, the court in *Wray* stated that it was improper for a trial judge to instruct the jury that "the whole tract must be first valued at what it was worth before the railroad touched it and again after the right of way was carved out, and the difference would represent the value of the part taken and appropriated."

In the present case, Landowner's appraiser planned to testify that the value of the 2.36 acres taken by the city was $165,200. That estimate is based upon his opinion that the value of the entire tract of land owned by Landowner was $735,000.00[3] and that the total property was 10.5 acres; therefore, the property was worth $70,000.00 per acre. Since the city was taking 2.36 acres of land that was worth $70,000.00 per acre, the value of the land taken by the city was $165,200.00. This method does not constitute consideration of the decrease in value of the remaining portion of Landowner's property; rather, it seeks to value the specific piece of land condemned. Accordingly, this testimony does not violate the holding in *Wray*.

The aim of the court in *Wray* was to prevent testimony that combined an assessment of damages to the land remaining with an assessment of the value of the land taken. The testimony of the expert in the present case does not combine these figures.[4] Having determined that the proposed testimony is admissible under the *Wray* holding, we find no basis for reversing the trial court in its exercise of its broad discretion to determine the admissibility of testimony of experts. *Brevard*, 545 S.W.2d at 436-37. The methodology used by the appraiser goes to the weight to be given his opinion of the value of the land taken, and the trier of fact is the final arbiter as to the credibility and weight

---

[2]The reasoning behind excluding this type of estimation is (1) it calls for the inference of the value of the property taken because there is no direct testimony about the value of the specific piece of property taken and (2) it combines the computations of value of the specific piece of property taken and damages to the remaining property due to the taking.

[3]These numbers are estimations calculated from the numbers provided in the briefs of the parties. They may not be exact and are used by this court strictly for explicative purposes.

[4]In addition to fair compensation for property actually taken, a landowner may be entitled to "incidental damages" to the land remaining in his possession after a partial taking. *State v. Parkes*, 557 S.W.2d 504, 507 (Tenn. 1977). Damages to the remaining portion of Landowner's property were not pled in this case.

of testimony.[5] *Davidson County Bd. of Educ. v. First Am. Nat'l Bank*, 301 S.W. 2d 905, 911 (Tenn. 1957). We affirm the trial court's exercise of its discretion in allowing the testimony of Landowner's expert.[6]

### III. Motion in Limine Regarding the Navigable Waterway

The city also filed a motion in limine to preclude Landowner from introducing evidence regarding the value of .61 acres which is part of the 2.36 acre tract condemned by the city. That .61 acres is part of the riverbed of the West Fork of the Stones River and is under water. The city asserts that the river is a navigable waterway and, pursuant to Tennessee law, the riverbed of a navigable waterway cannot be held by a private party. Therefore, the city asserts, Landowner is not entitled to compensation for land it cannot own or convey.

As proof that the West Fork of the Stones River is a navigable waterway, the city relies on a public notice posted by the US Army Corps of Engineers, dated May, 8, 1986, which includes a "List of Navigable Waters of the United States within the Nashville District." The list of navigable waters includes "West Fork, Stones River." The city argues that this public notice is conclusive evidence that the West Fork Stones River is navigable.

In Tennessee, where a waterway is "navigable" in the legal sense, it is deemed to be held by the state in trust for the citizens. *State ex rel. Cates v. West Tenn. Land Co.*, 127 Tenn. 575, 158 S.W. 746, 752 (Tenn. 1913). As such, neither the waters nor the lands underlying them are capable of private ownership. *Id.* at 747. "Under Tennessee law title to the bed of a navigable stream, to the low-water mark is publicly held and belongs to the State." *Uhlhorn v. Kaltner*, 637 S.W.2d 844, 846

---

[5]To the extent the city's real problem is a methodology which values all the acres on Landowner's property equally, the city is free to cross examine the appraiser regarding those issues and to present expert testimony of its own to contradict the value estimated by Landowner's appraiser.

[6]The city also included in its motion in limine regarding Landowner's expert's testimony a request that if the trial court allowed the expert's testimony that it, "[i]n the alternative . . . disallow any testimony based on the comparable sales used in [the expert's] report." The city made its objection on the ground that such testimony would not be relevant, and the trial court characterized it as based on the theory that the comparables used by the appraiser "are not sufficiently comparable to the land in question." The trial court actually granted the city's motion, but stated that "it appears that upon direct examination, no party should be entitled to discuss with their expert witnesses comparable sales specifically, because in fact everyone of land is unique, and the fact that another parcel . . . sold for some dollar value is hearsay . . . . " and would be excluded on grounds of relevance. The court further stated that "[t]he opportunity to explore such comparable sales rests with the party who cross-examines the expert witness should that party seek to attack the basis for the opinion of the expert stated on direct." This court has stated that "[a]s to value, the expert witness may express his opinion and then state the basis on which he arrived at that opinion, but the answers given to the questions on cross-examination may be looked to by the Court . . . in evaluating the opinion expressed by the [expert]." *Brevard*, 545 S.W.2d at 437. The city has argued the "comparable sales" issue in its brief. However, we decline to address the question of the admissibility of potential testimony which may or may not be elicited by the city on cross-examination of Landowner's expert. Further, the city's motion was granted, and the city's application for interlocutory appeal was granted by the trial court and by this court to review "the method of . . . valuation" used by the appraiser.

(Tenn. 1982). The legal consequences of a determination that a waterway is navigable, in the legal sense, are well settled.

> The only question for determination is whether Reelfoot Lake is a navigable body of water in the technical legal sense of that term. If it is, we think it is beyond dispute upon the authorities that neither the waters nor the lands underlying them are capable of private ownership. If it is not, and is navigable only in the common or ordinary acceptation of the term, then both the waters and the lands underlying them are capable of private ownership, and belong to the defendants.

*Cates*, 127 Tenn. at 580, 158 S.W. at 747.

To be a "navigable" such that it invokes the prohibition on private ownership, a waterway must, in its ordinary state, be capable of and suited to navigation by vessels employed in the ordinary purposes of commerce. *Cates*, 127 Tenn. at 584-86, 158 S.W. at 749. The determination of whether a waterway meets the definition, and is, therefore, navigable is one of fact to be determined by the jury. *Southern Ry. Co. v. Ferguson*, 105 Tenn. 552, 562-63, 59 S.W. 343, 346 (Tenn. 1900).

The issue of whether the Stones River is a navigable waterway was not determined herein, however, on the basis of a factual record. Instead, the trial court found:

> The rule in Tennessee has always been that the question of navigability of a stream is one of fact which must be determined by a jury. Where the federal government, however, has previously determined a stream to be navigable, it appears that from a practical standpoint, one who seeks to assert his possession of the land lying under the navigable stream would be prevented from doing so by virtue of federal enactments controlling those streams. Thus, where the federal government is exercising jurisdiction over the portion of the Stones River in question, neither the State nor the City, and certainly not a private landowner has any authority to exercise domain over that soil covered by the navigable waterway, and thus from a practical standpoint, it appears that the landowner in this cause should be prevented from introducing proof concerning that land below the low water mark of the river.

Thus, the issue before us is whether a determination by the federal government, or more accurately its agent the Corps of Engineers, that a waterway is navigable for federal purposes preempts state authority to determine whether that waterway is navigable in the legal sense with state law consequences to ownership interests. Because this issue presents a question of law, we review the trial court's decision *de novo*. Tenn. R. App. P. 13(d).

We begin by examining the Corps of Engineers' own statement of the authority and effect of the Public Notice which is the basis for the city's motion and the trial court's decision. That notice provided, in pertinent part:

The Corps of Engineers, under delegated authority from the Secretary of the Army, is responsible for the protection and preservation of all waters of the United States including navigable waters of the United States. . . . The term "navigable waters of the United States" is defined as those waters which are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce.

The definition used by the Corps is that contained in 33 C.F.R. § 329.4 (2001), part of the Rivers and Harbors Act of 1899. The authority of the Corps of Engineers over navigable waters of the United States is grounded in that Act, 33 U.S.C. §§ 401 et seq. The Act was originally passed to protect interstate commerce in navigable waters, and it is the basic legislation for controlling work and activities in navigable waters of the United States. Under the Act, the Chief of Engineers and the Secretary of the Army must approve all plans and specifications for the placement of structures and other works in the waterways which fit the legislative definition of "navigable waters of the United States." 33 U.S.C. § 401 (2001); 33 C.F.R. § 329.4 (2001) (stating the definition of navigable waters). Obstruction or alteration of such waters is prohibited without a permit from the Corps of Engineers. 33 U.S.C. § 401 (2001).

Federal law gives the Corps of Engineers the power to declare waterways navigable for the purpose of furthering its mission, and this declaration is "binding in regard to the activities of the Corps of Engineers." 33 C.F.R. § 329.9 (2001). However, "precise definitions of 'navigable waters of the Untied States' or 'navigability' are ultimately dependent on judicial interpretation and cannot be made conclusively by administrative agencies." 33 C.F.R. § 329.3 (2001). *See Miami Valley Conservancy Dist. v. Alexander*, 692 F.2d 447, 451 (6th Cir. 1982) (holding that the Corps of Engineers "failed to prove that [portions of the Miami] River and its tributaries are navigable" ); *United States v. Harrell*, 926 F.2d 1036, 1039 (11th Cir. 1991) (holding that the Corps of Engineers incorrectly determined that Lewis Creek was a navigable waterway). The regulations governing the Corps of Engineers make the same point clearly:

Although **conclusive determinations of navigability can be made only by federal Courts**, those made by federal agencies are nevertheless accorded substantial weight by the courts.

33 C.F.R. § 329.14 (emphasis added).

Because a determination by the Corps of Engineers that a particular waterway is a "navigable water of the United States" is not binding on a federal court called upon to make that legal decision, such agency determination cannot be binding on Tennessee courts on the question of whether a waterway is navigable in the legal sense, under state law, so as to affect ownership rights. For that reason, we disagree with the trial court's conclusion that the agency's public notice precludes judicial determination of navigability. While such a determination by the Corps may be accorded substantial weight, Landowner is entitled to introduce contrary proof and to question the Corps determination and the procedures used to reach it. *Miami Valley Conservancy Dist.*, 692 F.2d at 449-50; *Harrell*, 926 F. 2d at 1043-44 (the letter from the Corps of Engineers "fall far short of a determination of

navigability required by 33 C.F.R. § 329.14"and was not entitled to substantial weight, citing the procedures required by 33 C.F.R. § 329.14(b)).

The record before us does not include any reference to a federal court determination that the West Fork of the Stones River is a navigable water of the United States. We are not convinced, however, that a determination of navigability for federal regulatory purposes equates to a finding of navigability to state law purposes. Through the commerce clause of the United States Constitution, Congress has authority to legislate with respect to navigable waters to the extent commerce is concerned. *United States v. Chicago, M., St. P. & P.R. Co.*, 312 U.S. 592, 595, 61 S. Ct. 772, 775 (1941); *see also State v. Muncie Pulp Co.*, 104 S.W. 437, 449 (Tenn. 1907). The federal government has paramount or dominant control over navigable waters used in interstate commerce for purposes of and to the extent necessary to protect interstate commerce. *U.S. v. Rands*, 389 U.S. 121, 123, 88 S. Ct. 265, 226 (1967); *Day v. Armstrong*, 362 P.2d 137, 143 (Wyo. 1961). That control, however, involves use of the waterway, not ownership of the soil beneath it. "This power to regulate navigation confers upon the United States a 'dominant servitude.'" *Rands*, 389 U.S. at 123, 88 S. Ct. at 267. The Rivers and Harbors Act has no effect on or application to questions of ownership of the land under the waterway.

> The ownership of the bed and banks of navigable waters within a state ordinarily is governed by state law, subject to the paramount power of the United States to ensure that such waters remain free for interstate and foreign commerce. The ownership of such lands, as between the state and riparian owners, is determined according to the local law of the state in which they are situated.

65 C.J.S. *Navigable Waters* § 106, at 183 (2000). Navigable waters of the United States are public,[7] and their use cannot be interfered with by the state or the riparian owners. The federal government's paramount control over such waters is defined by the commerce clause. *Chicago, M., St. P. & P.R. Co.*, 312 U.S. at 595-96, 61 S. Ct. at 775. However, other than on lands owned by the United States, title of navigable waters, and the soil beneath them, lies in the states. *Donnelly v. United States*, 228

---

[7]In *Muncie Pulp Co.*, 119 Tenn. at 94-95, 104 S.W. at 449, our Supreme Court described the consequence of the Mississippi River having been declared a navigable water of the United States by Congress as follows:

> The commerce clause of the Constitution of the United States, all other things aside, affords ample protection to the right of every citizen to the free navigation of the river, whether the current be in one state or the other, without fear or hindrance or burdens imposed by such states.

In addition, in *Cates*, 158 S.W. at 749, our Supreme Court stated:

> The chief importance of determining whether Reelfoot Lake is navigable in the technical legal sense does not concern its use as a public highway for commerce, but is in regard to the respective rights of the public and private person in the use and ownership of its waters and the lands submerged by them. It is primarily a question of dominion and ownership, rather than one of commerce and travel. The right of the public to use its waters as a highway for commerce is precisely the same . . . .

U.S. 243, 260, 33 S. Ct. 449, 454 (1913). Consequently, a state may decide the ownership of submerged lands, irrespective of any federal determination of the navigable or nonnavigable character of the waters above them. *Day,* 362 P.2d at 141.

> Whether, under local law, the title to the bed of the stream is retained by the State or the title of the riparian owner extends to the thread of the stream, or, as in this case, to low water mark, the rights of the title holder are subordinate to the dominant power of the federal government **in respect of navigation**.

Chicago, M., St. P. & P.R. Co., 312 US at 596, 61 S. Ct. at 775 (emphasis added). In making a determination of ownership, the state may apply its rules regarding ownership of submerged lands. *Donnelly*, 228 U.S. at 260, 33 S. Ct. at 454. In Tennessee, that determination is fact based.

Therefore, we conclude that the question whether the West Fork of the Stones River is a navigable water of the United States does not necessarily determine the ownership, as a matter of law, of the riverbed.[8] Nonetheless, we recognize the inherent rationality of the trial court's observations regarding the relationship between navigability for federal law purposes and navigability for state law purposes. We interpret the trial court's statements as a recognition that a waterway which meets the definition of "navigable waters of the United States" will also be navigable under Tennessee's definition. The definition of "navigable waterway of the United States" has been considered often in federal courts, and can be summarized as follows:

> The test of navigability has been stated and restated by the federal courts for the last one hundred years. Navigability has been defined in countless ways but its essential elements have remained constant. The District Court here properly identified these elements: A navigable waterway of the United States must (1) be or have been (2) used or susceptible of use (3) in the customary modes of trade and travel on water (4) as a highway for interstate commerce.

*Miami Valley Conservancy Dist.*, 692 F.2d at 450.

---

[8]The city argues that the state legislature's adoption of Tennessee Code Annotated § 69-1-117 constitutes state recognition of the navigability of waterways which are subject to the Rivers and Harbors Act. We respectfully disagree. That statute is part of a chapter on watercourses which begins with the statement that all navigable waters are public highways. That provision has been determined to be merely a statement of the common law, and, even without the statute, common law forbids the obstruction of navigable streams. *Southern Ry. Co.*, 105 Tenn. 552, 562, 59 S.W. 343, 345 (1900). The remainder of the chapter deals primarily with keeping such waterways open for navigation. To that end, Tennessee Code Annotated § 69-1-117 prohibits any project which may impair the navigability of any waterway in the state without a permit issued by the state department of environment and conservation. Tenn. Code Ann. § 69-1-117(a). The portion of that statute upon which the city places significance simply states that any waterway subject to the Rivers and Harbors Act is exempt from the permit requirements. We interpret that provision merely as recognizing the Corps of Engineers permitting authority for those waterways covered by that Act. To the extent that the statute can be read as deferring authority to the federal government, it relates only to permitting authority. We find no legislative intent to grant authority to determine ownership rights under state law to an agency of the federal government.

-10-

Thus, there is logic to the assumption that a waterway which is used or usable for travel in interstate commerce would also be navigable for purposes of commerce within the state. We do not disagree with the trial court's assessment of the practicality of a factual determination that the West Fork of the Stones River is a navigable waterway of the United States. However, there is no proof in the record before us regarding the navigability of the river at all, except for the Public Notice issued by the Corps of Engineers.

Accordingly, we reverse the trial court's order finding that the West Fork of the Stones River is navigable and, thus, its riverbed is not subject to private ownership. The determination of navigability is still an issue for the trier of fact based upon evidence relevant to that determination.

However, we agree with the city that if the West Fork of the Stones River is determined to be navigable, Landowner is not entitled to compensation for that portion of the condemned land beyond the low-water mark, because there can be no private ownership rights in the riverbed.

> In this state it has long been established that grants of land lying upon navigable streams extend to the ordinary low water mark only, and that the title to the bed of such streams remains in the state. . . . If a water course be navigable in the legal sense, the soil covered by the water, as well as the use of the stream, not only belongs to the public but is not subject to entry or grant as other land.

*Cunningham*, 28 Tenn. App. at 651, 192 S.W.2d at 341 (citations omitted). Thus, any deed to Landowner which purported to include land under the river, if that river is determined to be navigable, must be read as conveying only that property extending to the low water mark.

Landowner has argued that, even if a portion of the condemned land lies under a navigable stream, the city cannot avoid paying for that portion because the city has already condemned the property and cannot "uncondemn" that portion. Landowner is mistaken its interpretation of the consequence of a determination that the river is navigable. If that is the case, the disputed portion of land under the riverbed belongs to the State, to be held in trust for the public. Such publicly held property is not subject to condemnation by a municipality. Therefore, if the Stones River is navigable, any attempt by the city to condemn the land belonging to the state was a nullity. The city is not "uncondeming" the property; rather, the property was never actually condemned.

We remand the issue of whether the river is navigable, in the legal sense, for evidence on that issue and, consequently, a determination, if it becomes necessary, regarding whether a portion, and what portion, of Landowner's property condemned by the city is incapable of private ownership because the river is a navigable waterway.[9]

---

[9]We do not hold that a reduction of the amount of land actually taken would result automatically in a concomitant reduction in the value of the land taken. That issue remains to be decided by the jury who is to determine the just compensation due Landowner in light of all relevant circumstances.

-11-

In summary, we affirm the trial court's ruling on the admissibility of the testimony of Landowner's appraiser regarding the value of the condemned property. We reverse the trial court's holding that Landowner is precluded from claiming ownership of land under the river and remand for a hearing on that issue. Costs are taxed to the City of Murfreesboro.

_____

PATRICIA J. COTTRELL, JUDGE